IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DENISE HARLAN,<br>*individually and on behalf of all*<br>*others similarly situated*,<br>*Plaintiff*, | :<br>:<br>:<br>:<br>: | CIVIL ACTION |
| v. | :<br>: | |
| TRANSWORLD SYSTEMS, INC., d/b/a,<br>NORTH SHORE AGENCY, INC.<br>*Defendant.* | :<br>:<br>: | No. 13-5882 |

A M E N D E D   M E M O R A N D U M

PRATTER, J.                                                                                                                            APRIL 14, 2013

Denise Harlan, individually and on behalf of all others similarly situated, has sued North Shore Agency, Inc. ("North Shore"), for alleged violation of the provision of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p, that requires debt collectors to provide a notice of validation rights—i.e., notice of the consumer's right to challenge the claimed debt, and how—in certain debt collection communications, *see id.* § 1692g(a).[1] North Shore filed a Motion to Dismiss (Docket No. 5), which the Court now denies.

---

[1] The subsection provides:

**(a)** Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

    **(1)** the amount of the debt;

    **(2)** the name of the creditor to whom the debt is owed;

    **(3)** a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

1

I.      **FACTUAL AND PROCEDURAL BACKGROUND**[2]

North Shore, acting as a debt collector for Disney Movie Club, sent Ms. Harlan a debt collection letter asking her to "**PLEASE RESPOND**" to its "attempt to collect a debt." The front of the letter, at the top, states an "Amount Due" of $46.39 to Disney Movie Club, North Shore's client; the letter repeats this figure at the bottom of the front in a shape that also states, "PAY THIS AMOUNT." A "Customer Service" telephone number appears below "Amount Due."

The front of the letter then states, in three partially overlapping, shadow-casting boxes, that North Shore's client has sent the recipient bills to which she has "not yet responded," and that "[t]his is an opportunity to make payment and avoid further collection involvement" by North Shore, which "has been retained to recover monies owed" to Disney Movie Club. The text in the third box (and the box most in the foreground and at the center of the page) states that the recipient may mail a "check for the full amount owed payable to [North Shore's] client, Disney Movie Club." Alternatively, "[i]f necessary," the text notifies the recipient, "you may contact our

---

**(4)** a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

**(5)** a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

[2] The Court omits a section discussing the familiar motion to dismiss standard of review and considers North Shore's letter, which is both attached to Ms. Harlan's Complaint and accepted by both parties as authentic. "[A] court may consider an undisputedly authentic document [upon] a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)); *accord Pryor v. NCAA*, 288 F.3d 548, 560 (3d Cir. 2002). If the document is one "on which the plaintiff[] rel[ies]," as where she "specifically reference[s] it in the complaint," the court "may therefore examine the [document] to see if it contradicts the complaint's legal conclusions or factual claims." *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 427 (3d Cir. 1999).

client directly at 1-877-336-2337," the same number that appears at the top of the page as the "Customer Service" telephone number.

Outside of and below these boxes, and following several lines' worth of white space, the front of the letter states, in slightly smaller text, "NOTICE-SEE REVERSE SIDE FOR IMPORTANT INFORMATION."

A picture, of course, is worth the proverb's thousand words[3]:

---

[3] *See generally* Richard A. Posner, *Reflections on Judging* 143-48 (2013).

# NORTH SHORE AGENCY

**NSA** 866-486-2424 EXT-14449
ID# ███████, ACCT NO-███████, TYPE-TP/TXD

**NORTH SHORE AGENCY**    9525 SWEET VALLEY DRIVE, BUILDING A • VALLEY VIEW, OH 44125

DENISE HARLAN
10754 JEANES ST FL A11
PHILADELPHIA PA 19116-3316

OCTOBER 12, 2012
RE: Disney Movie Club
Membership #: ███████
Amount Due: $46.39

Customer Service #: 1-877-336-2337

## PLEASE RESPOND

Our client's records indicate you have not responded to their bills. Therefore, North Shore Agency has been retained to recover monies owed to our client.

## STATEMENT OF RECOVERY

This is an opportunity to make payment and avoid further collection involvement. Our client's records indicate you have not yet resolved this matter. This is an attempt to collect a debt and any information obtained will be used for that purpose.

## STATEMENT OF INTENTIONS

Without your response, diligent collection of your account may continue. Govern yourself accordingly. Make your check for the full amount owed payable to our client, Disney Movie Club, and mail it in the enclosed reply envelope. If necessary, you may contact our client directly at 1-877-336-2337.

NOTICE-SEE REVERSE SIDE FOR IMPORTANT INFORMATION

Send correspondence, other than payments, to this collection agency at
PO Box 17211, Wilmington, DE 19850.

OCTOBER 12, 2012
G1C1JB10 V1VIP UD120G9001*TXD*

**Member #:** ███████
**Disney Movie Club**

DISNEY MOVIE CLUB
PO BOX 758
NEENAH WI 54957-0758

PAY THIS AMOUNT **$46.39**




DENISE HARLAN
10754 JEANES ST FL A11
PHILADELPHIA PA 19116-3316

NSAVP1

4

On the back, the letter consists of a box, at the top of which a bolded advisement of "**IMPORTANT INFORMATION**" precedes a version of the notice required by § 1692g(a), though all the text on the back is in a slightly smaller size than the text on the front:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor. This is an attempt to collect a debt. . . .

The text then provides several other notices ostensibly required by the laws of various states (and prefaced by statements such as "The State of _____ requires that we disclose the following for [that State's] Residents"). All of the paragraphs on the back are unindented and single-spaced.

The back:

**IMPORTANT INFORMATION**

We are required under applicable law to notify consumers of the following:

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor. This is an attempt to collect a debt. Any information obtained will be used for that purpose. This is a communication from a debt collector. Calls to or from this company may be monitored or recorded for quality assurance.

We are required under state law to notify consumers of the following rights. This list does not contain a complete list of the rights consumers have under state and federal law.

The State of California requires that we disclose the following for California Residents: The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

The State of Colorado requires that we disclose the following for Colorado Residents: A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking other action authorized by law to collect the debt. FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE www.coloradoattorneygeneral.gov/ca. Colorado office address and telephone number: 355 Union Blvd., Suite 350, Lakewood, CO 80228, 800-684-2383.

The State of Massachusetts requires that we disclose the following for Massachusetts Residents: NOTICE OF IMPORTANT RIGHTS. YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN (10) DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN (7) DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE DEBT COLLECTOR.

The State of Minnesota requires that we disclose the following for Minnesota Residents: This collection agency is licensed by the Minnesota Department of Commerce.

The City of New York requires that we disclose the following for New York City Residents: Contact Ryan Woods at North Shore Agency at 1-800-745-2935. This collection agency is licensed by the Department of Consumers Affairs of the City of New York; License # 1303528.

The State of North Carolina requires that we disclose the following for North Carolina Residents: This agency is licensed by the North Carolina Department of Insurance; License # 103177.

The State of Tennessee requires that we disclose the following for Tennessee Residents: This collection agency is licensed by the Tennessee Collection Service Board of the Department of Commerce and Insurance.

OFFICE HOURS: 9AM – 4:30PM Monday – Friday ET (877-238-1244)

To communicate with our office by mail, please send all correspondence to PO Box 17211, Wilmington, DE 19850 and include your account number and/or tear off coupon.

REV 7/12
F0120

PAP-F0120-C-0

>Ms. Harlan's Complaint charges North Shore with violating the FDCPA
>
>by placing the validation notice inconspicuously on the reverse side of the collection letter, without spacing or indenting, along with a cadre of other, inapplicable state notices, such that it is difficult for a consumer to notice. Defendant has violated the law's requirement that this important validation notice be prominent and conspicuous.

Compl. ¶ 2. North Shore, moving to dismiss, characterizes Ms. Harlan's "entire claim [as] predicated on the *format* of [North Shore's] initial notice." North Shore Mem. 1 (Docket No. 5-1) (emphasis added). North Shore argues that Ms. Harlan

>does not contend that the letter omitted any of the statutorily required information, or misstated the dispute and validation process. In fact, [Ms. Harlan] has no substantive complaint about the content of the letter. Instead, [her] claim is that the format of the validation notice operates to overshadow her validation rights because it is contained on the reverse side of the letter amongst other required disclosures.

North Shore Mem. 2. And Ms. Harlan's characterization, North Shore contends, is unavailing because its letter is

>not misleading to the least sophisticated debtor because: (1) it specifically directs the consumer in all capital letters to the reverse side of the letter to review important information regarding her rights under the FDCPA, (2) the validation notice contained in the letter precisely tracks the language of the FDCPA, and (3) the notice is legible and easily understood.

North Shore Mem. 2.

Far more than they realize, perhaps, the parties agree on the applicable legal standard. They also, with one apparent exception, agree that the Court can decide the issue presented—that is, whether the letter is confusing or misleading to the least sophisticated consumer—as a matter of law at the motion to dismiss stage.[4]

---

[4] The undisputedly authentic letter is before the Court. *See supra* note 2 and accompanying text. Although the Seventh Circuit Court of Appeals often requires or accepts survey evidence as to how the standardized consumer receives a letter's messages, *see, e.g., Sims v. GC Servs. L.P.*, 445 F.3d 959, 964 (7th Cir. 2006) ("As we have noted in the past, we welcome objective evidence that can be helpful in determining whether a dunning letter violates the FDCPA, such

Notwithstanding the parties' focus on the form or "format," to the exclusion of the substance, of North Shore's letter, Ms. Harlan's Complaint also alleges that "[t]he Notice must be sufficiently prominent to be readily noticed. It cannot be overshadowed by its placement, *nor by other language or notices in the letter*." Compl. ¶ 12. And, Ms. Harlan argues, North Shore's notice "is not prominent and is overshadowed by other language in the letter, in violation of § 1692g's requirement." Compl. ¶ 16.

**II.   ANALYSIS**

Because the Court holds that the substance of North Shore's debt collection letter overshadows its required notice of validation rights, the Court will decline the parties' invitation to decide whether the letter's formatting, taken alone, violates 15 U.S.C. § 1692g. *Cf. Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 149 (3d Cir. 2013) ("As the District Court indicated, the Validation Notice on the reverse side of HRRG's Collection Letter—*at least when viewed in isolation*—satisfied this statutory scheme." (emphasis added)).[5]

---

as surveys that attempt to measure the level of consumer understanding, similar to trademark cases."); *see also* Harlan Mem. 12 n.5 ("Plaintiff also notes that the Seventh Circuit stands alone in requiring survey evidence to determine a violation of the Act."), in the Third Circuit, "whether language in a collection letter contradicts or overshadows the validation notice is a question of law," *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 147 (3d Cir. 2013) (quoting *Wilson v. Quadramed Corp.*, 225 F.3d 350, 353 n.2 (3d Cir. 2000); *accord* Harlan Mem. 12 n.5. The "exception" noted above the line is Ms. Harlan's curious statement that while she "is confident [that North Shore's] Notice violates as a matter of law," she "must be allowed to offer evidence, including expert evidence, as to the letter's readability (or lack thereof) should the Court find it useful in making its legal determination." Harlan Mem. 4. Although this argument reads rather like the classic "heads I win, tails you lose" declaration, the Court need not address it, given the Court's holding discussed below.

[5] North Shore's interest in narrowly characterizing Ms. Harlan's argument as based on form only is understandable. If its notice of validation rights is substantively unproblematic, it has that much less to argue against. Ms. Harlan's approach is presumably just as narrow because it is responsive to those arguments that North Shore has raised. Either way, the Court will decline to reach the narrower issue unnecessarily.

The FDCPA is designed "to eliminate abuse debt collection practices." *Caprio*, 709 F.3d at 148. To this end,

> Congress adopted "the debt validation provisions of section 1692g" to guarantee that consumers would receive "adequate notice" of their rights under the FDCPA. . . . Another important purpose of this legislation was to insure that those debt collectors who refrain from using such practices are not competitively disadvantaged. *See, e.g.*, § 1692(e); *Lesher* [*v. Law Offices of Mitchell N. Kay, PC*], 650 F.3d [993,] 996 [(3d Cir. 2011)]. As remedial legislation, the FDCPA must be broadly construed in order to give full effect to these purposes. *See, e.g.*, *Lesher*, 650 F.3d at 997.

*Caprio*, 709 F.3d at 148 (citations omitted).

To provide consumers with such "adequate notice" of their rights, § 1692g(a) requires the debt collector to notify the consumer that she has a "thirty-day period" to dispute "the debt, or any portion thereof," in writing. 15 U.S.C. § 1692g(a)(4). Section 1692g(b), in turn, commands that "[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." *Id.* § 1692g(b).

The Third Circuit case law construing 15 U.S.C. § 1692g requires courts to "interpret [a debt collection] document from the perspective of 'least sophisticated debtor.' Designed to protect naïve and even gullible individuals, 'the "least sophisticated debtor" standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor."'" *Caprio*, 709 F.3d at 151 (quoting *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000) (quoting *Smith v. Computer Credit, Inc.*, 167 F.3d 1052, 1054 (6th Cir. 1999))). The least sophisticated debtor "'standard does not go so far as to provide solace to the willfully blind or non-observant,'" because the least sophisticated debtor "is still held to a quotient of reasonableness, a basic level of understanding, and a willingness to read [the debt collection communication] with care," rather than idiosyncratically, *id.* at 149 (quoting *Campuzano–Burgos*

9

*v. Midland Mgmt., Inc.*, 550 F.3d 294, 299 (3d Cir. 2008)). Somewhat improbably, the least sophisticated debtor is also "expected to read any notice in its entirety." *Id.* (citing *Lesher*, 650 F.3d at 997).

Under the "least sophisticated debtor" standard, courts ask whether the "substance" of the debt collection communication "contradicts," or the "form" of the debt collection communication "overshadows," the notice of validation rights, *see Caprio*, 709 F.3d at 151; *see also, e.g.*, *Wilson*, 225 F.3d at 360, or whether any implications of the form and substance taken together are inconsistent with the notice of validation rights, *see, e.g.*, *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir. 1991) ("[T]he juxtaposition of two inconsistent statements also rendered the statutory notice invalid under section 1692g."); *Caprio*, 709 F.3d at 148 ("'[A] collection letter will not meet the requirements of the Act' . . . where 'the validation notice is overshadowed or contradicted by accompanying messages or notices from the debt collector.'" (quoting *Wilson*, 225 F.3d at 355)). In other words, "a collection letter 'is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate.'" *Caprio*, 709 F.3d at 149 (quoting *Wilson*, 225 F.3d at 354 (quoting *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996))).

Whether or not the letter's formatting—the small text of the notice, its placement on the back, and the relatively small and less (if not in-) conspicuous advisement to see the reverse side of the letter—alone violates § 1692g, Ms. Harlan's Complaint states a claim for violation of § 1692g based on the misleading inconsistencies created by the letter's substance and form: the *content* of the front of the letter—especially when combined with the small form of the notice of validation rights and the reference thereto—is overshadowed by the content of North Shore's messages on the front of the letter. In other words, as Ms. Harlan has pleaded in her Complaint,

the required notice of validation rights "is overshadowed by other language in the letter, in violation of § 1692g's requirement." Compl. ¶ 16.

The front of North Shore's letter, in the third and most prominent of three overlapping boxes, underneath a capitalized, bolded advisement of North Shore's "**STATEMENT OF INTENTIONS**," states, in full:

> Without your response, diligent collection of your account may continue. Govern yourself accordingly. Make your check for the full amount owed payable to our client, Disney Movie Club, and mail it in the enclosed reply envelope. If necessary, you may contact our client directly at 1-877-336-2337.

As indicated earlier, the phone number is also provided at the top right of the letter as a "Customer Service #."

Even if the standardized "least sophisticated debtor" reads North Shore's letter in its entirety, as she is presumed to do—and thus reads the advisement to turn the letter over and, turning it over, reads the notice of validation rights—and, even assuming that the notice of validation rights is otherwise proper, this text under "**STATEMENT OF INTENTIONS**" overshadows the notice.

The case is a close one, but the Third Circuit Court of Appeals' guidance in *Caprio v. Healthcare Revenue Recovery Group, LLC*, 709 F.3d 142, frames the question and reveals the answer. Considering HRRG's debt collection letter to Mr. Caprio, the *Caprio* court reviewed precedent asking consumers to make a telephone call (something debt collection letters have done in a variety of ways):

> [T]his Court in *Wilson*, [225 F.3d] at 359-60 . . . turned to a ruling by the Ninth Circuit. In *Terran v. Kaplan*, 109 F.3d 1428 (9th Cir. 1997), the debt collection letter stated in its second paragraph that, "'[u]nless an immediate telephone call is made to J. SCOTT, a collection assistant of our office at (602) 258-8433, we may find it necessary to recommend to our client that they proceed with legal action,'" *id*. at 1434. Citing to *Graziano* and a number of other cases, the Ninth Circuit observed that "[e]very other circuit that has concluded that section 1692g was violated, in which the least sophisticated debtor standard is applied involved a

11

> written communication containing language regarding payment of the alleged debt that contradicted or overshadowed the validation notice." *Id.* at 1433 (footnote omitted). "In each of these cases, payment was demanded within a time period less than the statutory thirty days granted to dispute the debt and this demand was communicated in a format that emphasized the duty to make payment, and obscured the fact that the debtor had thirty days to dispute the debt." *Id.*; *see also Wilson*, 225 F.3d at 359-60 (summarizing *Terran*'s account of prior case law). In any case, the *Terran* court ultimately determined that the challenged language "simply encourages the debtor to communicate with the debt collection agency" and "does not threaten or encourage the least sophisticated debtor to waive his statutory right to challenge the validity of the debt." *Terran*, 109 F.3d at 1434. In contrast, HRRG's Collection Letter did more than merely ask Caprio to call or write if "we can answer any questions." It also asked him to "please call us toll free at 800-984-9115 or write us at the above address" if "you feel you do not owe this amount." In addition, the text of the *Terran* letter was presented in the same ordinary font and without any particular emphasis (with the exception of the debtor's name and the name of the person to contact), and the required validation notice appeared on the front side of the document (in the third and final paragraph). *Terran*, 109 F.3d at 1434.

*Caprio*, 709 F.3d at 152-53 (citations and footnote omitted). In a footnote that followed, the

*Caprio* court observed:

> We further note that the Second Circuit specifically considered a claim that a letter violated § 1692g because it asked the debtor to telephone the debt collector even though a telephone call is not sufficient to preserve the debtor's rights under FDCPA. The debt collection letter in *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292 (2d Cir. 2003), stated, inter alia, that "'[a]fter you have read the important notice on the reverse side of this letter, if appropriate please call our office to resolve this matter,'" *id.* at 296. In addition to including a validation notice on the reverse side of the document, "the front of the letter instructs the recipient that '[w]hen paying the balance in full or if you are unable to call our office, check one of the options below and return the bottom portion of this letter. . . .'" *Id.* at 310 (alteration in original). "While the options detailed on the bottom of the letter do not include requesting validation of the debt, the bottom of the letter states in large-print, capital letters, 'BEFORE RESPONDING TO THIS LETTER SEE REVERSE SIDE FOR IMPORTANT NOTICE.'" *Id.* The Second Circuit ultimately concluded that, "[w]ith these repeated instructions to review the validation notice on the back of the letter before responding to the letter, even the least sophisticated consumer would realize that it is 'appropriate' to contact W & A's office by phone only if the consumer did not wish to exercise his or her FDCPA rights as outlined on the reverse of the letter." *Id.* In other words:
>
>> Where a validation notice plainly specifies that FDCPA contact must be in writing, and nothing on the front of the letter suggests in any way that an instruction to call was intended to override the requirements outlined in

12

> the validation notice, we do not believe that a reasonable consumer—having twice been instructed to review the validation notice before taking any further action—who wished to exercise his or her FDCPA validation rights could be misled into thinking that the clear obligation to request validation in writing was somehow modified by either the invitation to call if appropriate or the four options on the bottom of the letter.

*Id.*

> In addition to lacking "repeated instructions" to read the reverse side of the document before taking any further action, HRRG's Collection Letter went beyond merely asking Caprio to "if appropriate please call our office to resolve this matter."

*Caprio*, 709 F.3d at 153 n.1.

In *Wilson*, the Third Circuit Court of Appeals had examined a letter that "contain[ed] three paragraphs," the third of which, "printed in the same font, size and color type-face," and also on the front of the letter, provided the statutorily required notice of validation rights. 225 F.3d at 352. The *Wilson* court concluded that

> contrary to Wilson's argument, the collection letter did not violate section 1692g of the Act for the reason that the first two paragraphs of the collection letter neither overshadow nor contradict the validation notice. First of all, upon review of the physical characteristics and form of the letter, we have concluded that the first two paragraphs of the letter do not overshadow the validation notice. The validation notice was presented in the same font, size and color type-face as the first two paragraphs of the letter. Moreover, the required notice was set forth on the front page of the letter immediately following the two paragraphs that Wilson contends overshadow and contradict the validation notice. Accordingly, Wilson's overshadowing claim must fail.

*Id.* at 356. In reaching this conclusion, the *Wilson* court distinguished as overshadowed the notices of validation rights in cases in which text appearing on the front of the letter (while the notice of validation rights was on the reverse) demanded "immediate" payment and exhorted the consumer to call if he had "a valid reason" or "to discuss this demand." *See id.* at 356-59 (quoting, inter alia, *Miller v. Payco–General American Credits, Inc.*, 943 F.2d 482, 483 (4th Cir. 1991); *Rabideau v. Mgmt. Adjustment Bureau*, 805 F. Supp. 1086, 1089-90 (W.D.N.Y. 1992)).

The *Wilson* court analogized, instead, to cases in which the debt collector stated, for instance, that "'[u]nless an immediate telephone call is made to [the collector's client], we may find it necessary to recommend to our client that they proceed with legal action,'" but in which "*[a] validation notice follows in the same size print.*" *Id.* at 359 (emphasis added) (quoting *Terran*, 109 F.3d at 1430); *see also id.* at 360 ("[T]he letter begins with the verification notice, right on the front of the letter, and does not hide it with an obscure reference to the reverse side of the letter, bury the notice in small print, or encourage its disregard in any way." (quoting *Vasquez v. Gertler & Gertler, Ltd.*, 987 F. Supp. 652, 657 (N.D. Ill. 1997)).

Both the *Wilson* and *Caprio* courts asked, in considering whether the message or "manner of presentation [of the letter] undercut[s] or overshadow[s] the message of the validation notice," whether the letter "threaten[s] or encourage[s] the least sophisticated debtor to waive his statutory right to challenge the validity of the debt." *Wilson*, 225 F.3d at 360; *see also Caprio*, 709 F.3d at 149, 152. *Caprio* presented a closer case than *Wilson*. The notice of validation rights was on the back of HRRG's letter; on the front, the text stated, inter alia,

> If we can answer any questions, or if you feel you do not owe this amount, **please call** us toll free at **800-984-9115** or write us at the above address. This is an attempt to collect a debt. Any information obtained will be used for that purpose. (NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.)

*Caprio*, 709 F.3d at 145.

The *Caprio* court held that the letter violated § 1692g. It explained:

> We do acknowledge that this "please call" language could be read as nothing more than a mere invitation given other aspects of the Collection Letter. In fact, the District Court may be correct that "[a] more appropriate reading of the Collection Letter reveals that the language on the front of the letter reflects an invitation to communicate, and the validation notice on the back of the letter sets forth the Plaintiff's rights." The short paragraph containing this "please call" language actually included the following instruction: "(NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.)" Already "charged with reading the Collection Letter in its entirety," Caprio would then find the required Validation

>   Notice on this "REVERSE SIDE." As the District Court also noted, the Collection Letter did not expressly state that a telephone call would be sufficient to dispute the debt.
>
>   However, it is not our responsibility to decide whether the debtor or the debt collector offers "a more appropriate reading" of a debt collection letter. We instead must interpret the document from the perspective of "least sophisticated debtor." . . .
>
>   Pursuant to this standard, we begin with the "substance" of the Collection Letter sent out by HRRG. This document instructed Caprio to call or write "if you feel you do not owe this amount." At the very least, the "least sophisticated debtor" could reasonably "feel" that he or she "do[es] not owe this amount" if he or she actually disputed the debt and its validity. If so, this "please call" language basically instructed such a debtor to call or write in order to dispute the debt itself. While he or she certainly could (and, in actuality, must) raise a debt dispute in writing, it is well established that a telephone call is not a legally effective alternative for disputing the debt. *See Graziano*, 950 F.2d at 112.
>
>   With respect to the "form" of HRRG's Collection Letter, we observe that even more attention was then drawn to this deficient alternative because both the words "please call" and the toll-free telephone number itself were printed in bold. This telephone number appeared again in the letterhead at the top of the Collection Letter in an even larger font. In contrast, no such bold print was used in either the phrase "write us at the above address" or in the Validation Notice. Likewise, HRRG's mailing address only appeared in the letterhead, where it was actually printed in a smaller font than HRRG's toll-free telephone number. We also note that—unlike the "please call" language—the required Validation Notice was relegated to the back side of the Collection Letter. Especially given these circumstances, it appears more likely that the "least sophisticated debtor" would take the easier—but legally ineffective—alternative of making a toll-free telephone call to dispute the debt instead of going to the trouble of drafting and then mailing a written dispute.
>
>   We therefore conclude that the Collection Letter was deceptive because "'it can be reasonably read to have two or more different meanings, one of which is inaccurate,'" i.e., that Caprio could dispute the debt by making a telephone call. *Wilson*, 225 F.3d at 354 (quoting *Russell*, 74 F.3d at 35). In short, the Validation Notice was overshadowed and contradicted because the "least sophisticated debtor" would be "'uncertain as to her rights.'" *Id*. (quoting *Russell*, 74 F.3d at 35).

*Caprio*, 709 F.3d at 151-52 (citations omitted).

*Caprio* controls the outcome here. HRRG's collection letter is, in some respects, more problematic than North Shore's—for instance, North Shore's does not ask Ms. Harlan to "please call"; it does not tell Ms. Harlan that she should call if she "feel[s she] does not owe this

15

amount." But these slight differences in language and approach are not dispositive. The front of North Shore's letter states that "[w]ithout [Ms. Harlan's] response, diligent collection of [her] account may continue." The "**STATEMENT OF INTENTIONS**" then indicates, with a juxtaposed sentence, that "[i]f necessary, [she] may contact our client directly" by telephone—thus implying, especially to the "least sophisticated debtor," that her "response" should be by telephone. And, more to the point, why would a response be necessary, other than to dispute a debt, given that the only other conceivable option, both as a matter of common sense and also as provided explicitly in the preceding sentence, is to "[m]ake your check for the full amount . . . and mail it in the enclosed reply envelope"?

North Shore's notice of validation rights, printed on the back of its letter, cannot salvage the received message. The reader will presumably turn to the notice upon seeing a slightly smaller advisement on the front of the letter, but this advisement is not in the same "**STATEMENT OF INTENTIONS**" box as the overshadowing language, and it is therefore less likely to be read by a "least sophisticated debtor" in conjunction with (and, necessarily, as *overriding*) the message about placing a telephone call. By contrast, the advisement in *Caprio*—which could not salvage the letter there—*immediately followed* the "please call" language. Thus, as in *Caprio*, the least sophisticated debtor in Ms. Harlan's shoes could "'reasonably read'" North Shore's debt collection letter "'to have two or more different meanings, one of which is inaccurate,' i.e., that [she] could dispute the debt by making a telephone call." *Caprio*, 709 F.3d at 152 (quoting *Wilson*, 225 F.3d at 354); *see also, e.g.*, *Hishmeh v. Cabot Collection Sys., L.L.C.*, No. 13-4795, 2014 WL 460768, at *5 (E.D. Pa. Feb. 5, 2014) ("That statement may mislead the debtor into believing that a phone call is a valid way of verifying or disputing her debt when, in the Third Circuit, a written communication on those issues is required.");

*Graziano*, 950 F.2d at 111 ("To comply with the terms of the Act, statutory notice must not only explicate a debtor's rights; it must do so effectively."). Indeed, North Shore's "**STATEMENT OF INTENTIONS**" suggests that "diligent collection of your account may continue" "[w]ithout [Ms. Harlan's] response"—impliedly a telephonic response to dispute the debt—but, in truth (and uncertainly unbeknownst to the least sophisticated debtor), by operation of *law*,

> [i]f the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, *the debt collector shall cease collection of the debt*, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b) (emphasis added).

For these reasons, this case is also not like those cases cited by the Third Circuit Court of Appeals in which language regarding telephone calls was held not to overshadow notices of validation rights. For instance, in *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, noted in the *Caprio* court's footnote excerpted above, *see* 709 F.3d at 153 n1, there were "repeated instructions to review the validation notice on the back of the letter before responding to the letter," *Caprio*, 709 F.3d at 153 n.1 (quoting *Miller*, 321 F.3d at 310). Here, there were no such repeated instructions to suggest that the language on the back would control in the event of an inconsistency. Nor does the "[i]f necessary" language here, when taken in context, enough resemble *Miller*'s "if appropriate" language or the warning in *Terran v. Kaplan*, 109 F.3d 1428, that "[u]nless an immediate telephone call is made . . . we may find it necessary to recommend to our client that they proceed with legal action." *Caprio*, 709 F.3d at 152-53 (quoting *Terran*, 109 F.3d at 1434). In *Terran*, in fact, "[t]he validation notice immediately follow[ed] the language regarding an immediate telephone call . . . in ordinary, same-size font. . . ." 109 F.3d at 1434.

17

Here, by contrast, the language on the front of the letter suggests that Ms. Harlan can either mail in her money, or, "[i]f necessary" (presumably, because she feels she does not owe the money), she can call. But, again, a call is not the way to dispute a debt.

As suggested above, the Court will not opine on the adequacy of the formatting alone of the notice of validation rights; doing so is unnecessary and would amount to providing legal (and drafting) advice in derogation of a federal court's duty. Nor, similarly, will the Court attempt to rewrite North Shore's letter in such a way as would bring it within the bounds of what § 1692g permits (although the Court will observe that a properly worded notice of validation rights in fourth box on the front of the letter may have done much to lift the shadow). But the Court will observe that notwithstanding the remedial aims of the FDCPA, debt collectors, such as North Shore here, appear to treat the statute, still, as possible to overcome by gamesmanship. It seems that no debt collector would *want* to prominently display a notice of validation rights for concern that doing so would reduce the rate at which less sophisticated consumers simply pay to make the inconvenience (or intimidation) go away, even if the debt is not in fact valid. After all, "Congress designed the Federal Act to 'eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.'" *Swanson v. S. Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988) (quoting S. Rep. No. 95-382, at 4 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1699). Instead, debt collectors can avoid gambling with liability by using "safe harbor" language that clearly falls within the statute's requirements. In an opinion for the Seventh Circuit Court of Appeals, Judge Posner has taken up the scrivener's pen to rewrite a debt collection letter in a manner that would make the consumer's rights clear. *See Bartlett v. Heibl*, 128 F.3d 497, 501-02 (7th Cir. 1997).

Of course, the Seventh Circuit Court of Appeals promulgated such "safe harbor" language precisely "[b]ecause the words 'contradicting or overshadowing' do not provide much guidance to debt collectors." *Riddle & Assocs., P.C. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005). Indeed, this lack of guidance may help explain why the FDCPA continues to generate so much litigation—whether § 1692g violations are to be determined as a matter of law by a court, as in the Third Circuit, or based on surveys, as in the Seventh Circuit, the outcome can sometimes be difficult to assess before litigation; and then, the litigation that § 1692g produces generates a significant transaction cost. More explicit regulation—if not by legislators reacting to a parade of horribles, then perhaps by professionals more experienced in the field of debt collection—could reduce the demand that FDCPA litigation involve mind-reading the "least sophisticated debtor" (or Congress).[6]

---

[6] One obvious response to this situation would be rulemaking by an appropriate agency, such as the Federal Trade Commission or the Consumer Financial Protection Bureau ("CFPB"). And, in fact, the CFPB has given advance notice of proposed rulemaking regarding FDCPA regulations. Noting that "FDCPA section 809(a) [§ 1692g(a)] does not impose formatting requirements for validation notices, such as form, sequence, location, grouping, segregation, or type-size requirements for the information in the notice," the CFPB has called explicitly for comments on, inter alia, "[w]hat additional information . . . debt collectors typically include on or with validation notices beyond the mandatory disclosures." *See* CFPB: Debt Collection (Regulation F): Advance Notice of Proposed Rulemaking, 78 Fed. Reg. 67,848, 67,857–59 (Nov. 12, 2013) ("III. Validation Notices, Disputes, and Verifications (Section 809 of the FDCPA)"). The CFPB may be aiming to do more with regard to the substance and formatting of validation notices as the issue proceeds through the rulemaking process, thereby perhaps reducing future generations of FDCPA litigation that only proves that neither consumers nor debt collectors know their rights ex ante, and not entirely through fault of their own.

### III.     CONCLUSION

For the foregoing reasons, North Shore's Motion to Dismiss (Docket No. 5) is denied. Ms. Harlan has moved for no relief, and given, additionally, the class action components of her Complaint, the Court can take no further action at this time. North Shore shall answer the Complaint within the time required by the Federal Rules of Civil Procedure, and the parties shall appear in Chambers for an initial pretrial conference on Monday, April 28, 2014, at 2:30 PM, in compliance with the guidance provided in the April 8, 2014 Notice (Docket No. 12).

BY THE COURT:

/S/ Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge