IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENISE HARLAN, on behalf of herself and all others similarly situated,<br>　　　　　　　　　　Plaintiff,<br><br>　　　　vs.<br><br>TRANSWORLD SYSTEMS, INC., d/b/a NORTH SHORE AGENCY, INC.<br>　　　　　　　　　Defendant. | NO. 13-cv-05882(GP)<br><br><br><br><br><br>CLASS ACTION |

**PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS SETTLEMENT (UNCONTESTED)**

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT THEREOF**

Dated:  8/15/14

**CARY L. FLITTER
THEODORE E. LORENZ
ANDREW M. MILZ**

**FLITTER LORENZ, P.C.**
450 N. Narberth Avenue, Suite 101
Narberth, PA 19072
(610) 822-0782

Attorneys for Plaintiff and the Class

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENISE HARLAN, on behalf of herself and all others similarly situated,<br><br>                                    Plaintiff, | NO. 13-cv-05882(GP) |
| vs. | |
| TRANSWORLD SYSTEMS, INC., d/b/a NORTH SHORE AGENCY, INC.<br>                                    Defendant. | CLASS ACTION |

## PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT (UNCONTESTED)

Plaintiff, Denise Harlan, moves the Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for preliminary approval of a Class Action Settlement.

1.       Plaintiff Denise Harlan brings this case as a class action against Defendant Transworld Systems, Inc. d/b/a North Shore Agency ("Defendant" or "NSA") for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. § 1692 et seq.

2.       Plaintiff has averred that Defendant routinely sent out a form collection letter that failed to clearly and conspicuously disclose the important notice of validation rights required by the FDCPA, 15 U.S.C. § 1692g. A copy of the challenged collection notice is appended hereto as Exhibit "1". Defendant has denied the allegations. The Court has written on the issue in denying a Motion to Dismiss. *See Harlan v. Transworld Sys., Inc.,* 2014 WL 1414508 (E.D. Pa. Apr. 14, 2014).

3.       The parties have now reached a Settlement Agreement, subject to approval of this Court. The Settlement Agreement is attached hereto as Exhibit "2".

4.       The Settlement Agreement identifies the Subject Letter challenged in this law suit as follows:

> shall mean a letter sent by NSA in substantially the form of the NSA letter dated October 12, 2012, attached to Plaintiff's complaint as Exhibit A, where the letter was the initial communication from NSA in which the statutory section 1692 validation notice was printed on the reverse of the letter in  in uppercase and lowercase type, among paragraphs which were not indented or spaced, and placed along other copy that was capitalized, and the phrase "NOTICE-SEE REVERSE SIDE FOR IMPORTANT INFORMATION" in all capital letters was on the front of the letter.

(Ex. "2" at ¶C).

5.      The agreement then defines the Class Members as "all persons with addresses in Philadelphia, Pennsylvania, who were sent the Subject Letter where the underlying debt was incurred primarily for personal, family or household use, where the letter bears a date from October 12, 2012 to October 4, 2013.  NSA represents there are approximately 222 Class Members." (Id. at ¶D).

6.      Plaintiff now seeks preliminary approval of the Settlement Agreement and asks that the Court certify the following Class pursuant to Rule 23 for settlement purposes:

> All persons with addresses in Philadelphia, Pennsylvania, who were sent an initial collection letter from NSA in which the statutory 1692g validation notice was printed on the reverse of the letter, in uppercase and lowercase type, among paragraphs which were not indented or spaced, and placed along other copy that was capitalized, and the phrase "NOTICE-SEE REVERSE SIDE FOR IMPORTANT INFORMATION" in all capital letters was on the front of the letter, where the underlying debt was incurred primarily for personal, family or household use, where the letter bears a date from October 12, 2012 to October 4, 2013.

(Ex. "2" at ¶¶ C-D).

7.      The Settlement Agreement is fair, reasonable, and in the best interest of the class and provides, *inter alia*, the following relief:

> (a) Defendant will make a classwide settlement payment in the amount of $22,200.00 to be paid in $100 checks to each Class Member who does not opt-out and to whom the Class Notice was not returned as undeliverable;

(b) Defendant will pay the costs associated with the administration of the settlement, and First Class, Inc. of Chicago will serve as the Class Administrator;

(c) Notice of the class settlement will be mailed to the class of 222 individuals who received the challenged letter during the Class Period;

(d) Defendant will pay Plaintiff Harlan $1,000.00 for her individual claims under the FDCPA and a $1,000.00 incentive award for her services as Class Representative;

(e) Defendant will pay Class Counsel attorney fees and out-of-pocket expenses in the amount of $44,450.00, subject to Court approval;

(f) Upon final approval by the Court, the Plaintiff and the Class will release, acquit and forever discharge Defendant from the claims set forth in the Class Action Settlement and Release.

(*See* Sett. Agrmt., Exhibit "2" hereto).

8.      All requirements for class certification under Rule 23 of the Federal Rules of Civil Procedure are satisfied here.

9.      The Class is so numerous that joinder of all members is impractical. Defendant has attested to 222 putative Class Members and will provide a list with the names and last known addresses of the affected individuals upon preliminary approval.

10.      There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. The principal common issue is whether Defendant's form letter failed in form and substance to convey the statutorily required notice of validation rights as required by 15 U.S.C. §1692g.

11.     Ms. Harlan's claim is typical of the claims of the members of the Class.  All of the claims are based on the same factual and legal theories, *i.e.* -- each Class Member received the same form collection letter with the challenged validation notice (which allegedly encouraged a phone call to dispute a debt) where the statutory validation rights notice was on the back of the letter, among other copy.

12.     Plaintiff will fairly and adequately protect the interests of the Class.  She is committed to vigorously litigating this matter and has retained counsel experienced in prosecuting consumer class actions.  (*See*  Exhibits "5" and "6", Certifications of Cary L. Flitter and Andrew M. Milz filed herewith).

13.     Pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, a class action is a superior method for the fair and efficient adjudication of this controversy in that:

a.     Congress specifically contemplated FDCPA class actions as a principal means of enforcing the statute.  15 U.S.C. § 1692k(a)(2)(B).

b.     Most of the Class Members are not aware of their rights and have no knowledge that their rights are being violated by illegal collection practices.

c.     The interest of Class Members in individually prosecuting separate claims against Defendant is small because the maximum amount of statutory damages in an individual action is $1,000.00.  15 U.S.C. § 1692k(a).

d.     Management of this class action is not likely to present significant difficulties, and presents fewer difficulties than those presented in many class claims.

14.     Pursuant to Fed. R. Civ. P. 23(e)(4), Plaintiff proposes a Notice of Class Action Settlement in the form attached as Exhibit "3" hereto which affords Class Members the opportunity to request exclusion and informs Class Members of their right to object to the Class Action Settlement.

15.     As set forth in the attached Memorandum and Certification of Counsel, which is incorporated herein, the proposed settlement was reached after arms-length negotiations, is eminently fair, reasonable and in the best interests of the Class, and settlement is recommended by Class Counsel.

WHEREFORE, for the reasons set forth more fully in the within Memorandum of Law, attached Certifications, and for good cause shown, Plaintiff submits that this settlement is fair, reasonable and adequate, reached after protracted arms-length negotiation, and in the best interest of the Class.   Preliminary approval should be granted to permit Notice to issue to the Class. Defendant consents to preliminary and final approval.


Date:  8/15/14                              /s/ Cary L. Flitter
                                           CARY L. FLITTER
                                           THEODORE E. LORENZ
                                           ANDREW M. MILZ

                                           FLITTER LORENZ, P.C.
                                           450 N. Narberth Avenue, Suite 101
                                           Narberth, PA 19072
                                           (610) 822-0782
                                           Attorneys for Plaintiff and the Class

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENISE HARLAN, on behalf of herself and all others similarly situated, <br>                                    Plaintiff, <br><br> vs. <br><br> TRANSWORLD SYSTEMS, INC., d/b/a NORTH SHORE AGENCY, INC. <br>                                    Defendant. | NO. 13-cv-05882(GP) <br><br><br><br><br><br> CLASS ACTION |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT (UNCONTESTED)

Plaintiff, Denise Harlan, moves the Court pursuant to Fed. R. Civ. P. 23 for preliminary approval of a Class Settlement reached in this matter involving alleged violations of the Fair Debt Collection Practices Act ("FDCPA" or "Act"), 15 U.S.C. § 1692, et seq. Plaintiff's claims arise out of the form collection letter sent by Defendant Transworld Systems, Inc., d/b/a/ North Shore Agency ("Defendant" or "NSA") which fails to clearly and conspicuously convey the important notice of validation rights as required by the FDCPA, 15 U.S.C. § 1692g. The challenged collection letter is attached hereto as Exhibit "1".

The parties have now reached a class settlement, subject to approval of this Court. The settlement was reached after extensive arms-length negotiations between the parties. The settlement terms are fair, reasonable and adequate and in the best interest of the Class. Defendants shall pay: (1) a classwide settlement payment in the aggregate amount of $22,200.00 to be divided in shares of $100.00 for each of the Class Members to whom the Class Notice was not returned as undeliverable and who choose to remain in the Class; (2) Plaintiff Denise Harlan the sum of $1,000.00 for her individual claims (as provided by the Act) and $1,000.00 for her services as a Class Representative; and (3) reasonable Class Counsel fees and litigation costs in an amount

capped at $44,450.00.   The complete terms of the Settlement Agreement are set forth in the attached Class Action Settlement Agreement and Release (hereinafter "Settlement Agreement") attached as Exhibit "2" hereto and discussed at length below.

The relief sought in this Motion is uncontested by Defendant, who joins in the request for preliminary approval.   A copy of the proposed Order for Preliminary Approval is separately filed herewith as Exhibit "4".   The proposed Order for Preliminary Approval establishes certain dates and the method for mailing notice to the Class, the procedure and timing for administration and filing of objections, if any, to the settlement, or requests for exclusion by members of the Class. The proposed Class Notice to the members of the Class is filed herewith as Exhibit "3".

For the reasons set forth more fully herein, Plaintiff submits that all the requirements of Rule 23 are met, that preliminary approval of the settlement should be granted, and notice permitted to issue to the Class.

## I.   NATURE OF THE CASE

### A.   Procedural Background

Plaintiff, Denise Harlan brings this case as a Class Action against Transworld Systems, Inc., d/b/a North Shore ("NSA" or "Defendant").   Harlan sued to redress Defendant's violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (hereinafter "FDCPA"), alleging that Defendant debt collector violated the provision of the FDCPA requiring clear and conspicuous notice of validation rights, 15 U.S.C. § 1692g.

Ms. Harlan's class action Complaint was filed in this Court on October 4, 2013.  (Doc. No. 1).   Shortly thereafter, Defendant NSA filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) arguing Plaintiff failed to state a claim for relief under the FDCPA. (Doc. No. 5). Plaintiff opposed NSA's motion.   (Doc. No. 7).   By Order and Memorandum dated April 8, 2014, as

amended April 14, 2014 (Doc. Nos. 14-15), the Court denied Defendant's motion to dismiss. Defendant then sought reconsideration or alternatively interlocutory appeal (Doc. No. 17), which Plaintiff opposed (Doc. No. 20). The Court denied defendant's motion for reconsideration on May 16, 2014. (Doc. No. 21). As demonstrated by the motion practice to date, the merits of this case have been hotly disputed, as Defendant continues to deny liability and damages.

**B.    Class Action Overview**

The FDCPA specifically contemplates class action as a tool of enforcement. 15 U.S.C. § 1692k(a)(2), (b)(2). The Act provides that statutory damages in a class case are capped at the lesser of 1% of the debt collector's net worth or $500,000.00. 15 U.S.C. § 1692k(a)(2)(B). Pursuant to discovery requests, NSA has provided its balance sheet for the period ending May 31, 2014 which reflects that the collector's net worth is $534,176.51 (inclusive of balance sheet goodwill). Thus, the potential class recovery, or 1% of NSA's net worth, is alleged to be $5,341.76 (a sum, which, divided among the 222 class members, would yield about $24.00 per capita). This settlement, if approved, at $22,200.00 ($100.00 per Class Member) would thus well exceed potential statutory damages. Settlement avoids the need for the Court or a jury to determine the contested question of liability, or the extent of damages available under the FDCPA.

In settlement of this suit, the Defendant will create a Settlement Fund of $22,200.00, yielding $100.00 payments to the Class Members. (Exhibit "2", Sett. Agrmt. ¶15(A)). Defendant will also pay, subject to Court approval, Class Counsel fees and litigation expenses in an amount up to $44,450.00. (Id. at ¶ 16). At the time of final approval, Plaintiff will make appropriate request for approval of Class Counsel fees and costs. Additionally, as part of the settlement, Defendant has agreed to pay Plaintiff Harlan an individual award ($1,000.00) and class incentive award ($1,000.00) in the aggregate amount of $2,000.00, plus any share in the class recovery. (Id. at

¶15(D)).  *See Fry v. Hayt, Hayt and Landau*, 198 F.R.D. 461, 472 (E.D. Pa. 2000) (holding named plaintiff, may, under FDCPA, receive her statutory recovery plus any share of class recovery under unique wording of Act); *Rosenau v. Unifund Corp.*, 646 F. Supp. 2d 743, 755 (E.D. Pa. 2009) (discussing propriety of incentive award in FDCPA class settlement).   Defendant has also agreed to change its validation notice, to comply with the Act's requirements.  (Exhibit "2", Sett. Agrmt. ¶ 15(E)).

For the reasons which follow, Plaintiff submits that this is a favorable settlement for the Class.  The settlement should be preliminarily approved and notice permitted to issue.

II.      **NATURE OF PLAINTIFF'S CLAIMS UNDER THE FDCPA**

The FDCPA provides that a debt collector must give a Notice of Validation Rights either in the initial communication or within five days of the initial communication to the consumer. 15 U.S.C. § 1692g(a).  *Caprio v. Healthcare Revenue Recovery Grp.*, 709 F.3d 142, 147-48 (3d Cir. 2013); *Wilson v. Quadramed*, 225 F.3d 350, 354 (3d. Cir. 2000).  These validation rights include the right to verification (of the amount, original creditor, etc.) of a debt and the right to dispute a debt. § 1692g(a).  Congress considered the validation notice to be a significant feature of the Act, passed in order to:

> "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." S.Rep. No. 382, 95th Cong.2d Sess. 4, reprinted in 1977 U.S.Code Cong. & Admin.News 1695, 1699. It added the validation of debts provision specifically to ensure that debt collectors gave consumers adequate information concerning their legal rights. See id., 1977 U.S.Code Cong. & Admin.News at 1702.

*Swanson v. Southern Or. Credit Serv., Inc.,* 869 F.2d 1222, 1225 (9th Cir. 1988); *see also Wilson*, 225 F.3d at 354 ("the debt validation provisions of section 1692g were included by Congress to guarantee that consumers would receive adequate notice of their rights under the law").

The Validation Notice must contain in part the following information:

(3)  a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4)  a statement that if the consumer notifies the debt collector <u>in writing</u> within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's <u>written</u> request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(3)-(5)(emphasis added).

Because the policy behind, and the rights contained in, the Validation Notice are so important, the "statutory notice must not only explicate a debtor's rights; it must do so effectively." *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir. 1991); *Caprio*, 709 F.3d at 148.  To be effectively conveyed, the Notice "must be in print sufficiently large to be read, and must be sufficiently prominent" to be noticed.  *Graziano*, 950 F.2d at 111 (citing *Swanson*, 869 F.2d at 1225); *see also U.S. v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 139 (4th Cir.1996) (notice "must be placed in such a way to be easily readable, and must be prominent enough to be noticed by an unsophisticated consumer.") (emphasis added); *Swanson*, 869 F.2d at 1225-26 (same).  The Notice may not be overshadowed by its placement, nor by other accompanying messages or notices from the debt collector. *Caprio*, 709 F.3d at 148.  In the Third Circuit, a dispute is only legally effective if it is made in writing.  *Id.*

As discussed above, Ms. Harlan's complaint here is that the Notice that Defendant chose to place on the reverse side of its collection letter is not "sufficiently prominent to be noticed" and is "overshadowed" by other language in the collection letter.  The subject collection letter is

5

attached hereto as Exhibit "1" and is copied in full in the Court's April 14, 2014 opinion denying

defendant's Motion to Dismiss. *See Harlan v. Transworld Sys., Inc.*, 2014 WL 1414508, *1 (E.D.

Pa. Apr. 14, 2014).   NSA's Notice is inconspicuously listed among other notices on the reverse

side of the collection letter in a long, mostly non-spaced box of legal notices. *Id.* at *1.  The

presence of the phone number, contrasted with the alternative of continued collection and payment,

implies that a phone call is an appropriate way to dispute, when that is not the case in the Third

Circuit. *Id.* at *8-9; *Caprio*, 709 F.3d at 148, 151-52.

As NSA's letter is a form letter, and there are no individualized issues (such as causation

or reliance), Plaintiff believes this case presents the paradigm for class action resolution.  Congress

intended the FDCPA to be enforced by debtors acting as private attorneys general and by the

private class action mechanism. *Weiss v. Regal Collections*, 385 F.3d 337, 345 (3d Cir. 2004)

(class action mechanism central to FDCPA enforcement where the claims are generally modest).

## III.   ELEMENTS FOR CLASS CERTIFICATION ARE MET

### A.  Standard for Class Certification

"[B]efore approving a class settlement agreement, a district court first must determine that

the requirements for class certification under Rule 23(a) and (b) are met." *Sullivan v. DB Invs.,*

*Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (en banc) (internal quotation marks omitted)).  The district

court must apply a rigorous analysis of the Rule 23 elements, while mindful of the strong judicial

policy in favor of class action settlement. *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 380 (3d Cir.

2013).

Routinely,  the  four  Rule  23(a)  requirements  are  described  as  "numerosity,"

"commonality," "typicality," and "adequate representation." *Montgomery Cnty., Pa. ex rel.*

*Becker v. MERSCORP, Inc.*, 298 F.R.D. 202, 209 (E.D. Pa. 2014).  In order for a class to be

certified, all four requirements of Rule 23(a) must be satisfied along with one of the three categories of Rule 23(b). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997); *McCall v. Drive Fin. Servs., L.P.*, 236 F.R.D. 246, 249 (E.D. Pa. 2006); *Parks v. Portnoff Law Associates, Ltd.*, 210 F.R.D. 146, 149 (E.D. Pa. 2002). Certification here is sought under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," such that "a class action is superior to other methods for fairly and efficiently adjudicating the controversy." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011).

Challenges to the legality of collection notices have been routinely certified in this district. *See e.g., Jordan v. Commw. Fin. Sys., Inc.*, 237 F.R.D. 132 (E.D. Pa. 2006) (FDCPA class claims); *McCall v. Drive Fin. Servs., L.P.*, 236 F.R.D. at 250-51 (same); *Seawell v. Universal Fidelity Corp.*, 235 F.R.D. 64 (E.D. Pa. 2006) (same); *Oslan v. Collection Bureau of Hudson Valley*, 206 F.R.D. 109 (E.D. Pa. 2002) (same).

### B.  The Proposed Class Meets the Requirements for Certification

### 1.  Rule 23(a)(1) – At 222 Consumers, the Class is Sufficiently Numerous

Rule 23(a)(1) of the Federal Rules of Civil Procedure requires that the class be "so numerous that joinder of all members is impracticable." *Weiss v. York Hosp.*, 745 F.2d 786, 808 (3d Cir. 1984). Our Court of Appeals has held that generally a class of more than 40 satisfies the numerosity requirement. *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001); *Sherman v. Am. Eagle Express, Inc.*, 2012 WL 748400, *4 (E.D. Pa. Mar. 8, 2012).

Here, Defendant has attested to 222 putative Class Members who reside in Philadelphia, Pennsylvania and who received the offending letter during the Class Period, *i.e.*, between October 12, 2012 and October 4, 2013. (Exhibit "7", Def's Supplemental Responses to Pl's Interrogatories

at #11).  Defendant has compiled the list of the names and last known addresses of the identified

Class Members and will provide the list upon preliminary approval of the class settlement.  (Ex.

"2", Sett. Agreement at ¶ 7(B)).  Joinder of all 222 members of the Class is impracticable and,

accordingly, Rule 23(a)(1)'s numerosity requirement is readily met.

### 2.  Rule 23(a)(2) – NSA's Standard Form Collection Letter Presents Common Issues of Law and Fact

Turning to the second component of Rule 23(a), "commonality requires the plaintiff to

demonstrate that the class members have suffered the same injury." *Dukes*, 131 S. Ct. at 2551

(citations omitted).  It is the law in the Third Circuit that a putative class satisfies the commonality

requirement if "the named plaintiffs share at least one question of fact or law with the grievances

of the prospective class." *Rodriguez*, 726 F.3d at 382 (quoting *Baby Neal v. Casey*, 43 F.3d 48, 56

(3d Cir.1994)).  Not all factual or legal questions raised in the litigation need be common so long

as at least one issue is common to all Class Members.  *Baby Neal*, 43 F.3d at 56-57; *Lake v. First*

*Nationwide Bank*, 156 F.R.D. 615, 624 (E.D. Pa. 1994); *Tenuto v. Transworld Sys., Inc.*, 2000 WL

1470213 at *2 (E.D. Pa. Sept. 29, 2000) (holding consumer's theory which rests upon the "same

facts about the [collection] letter and defendant's collection practices" towards the class members

establishes commonality for FDCPA class).

Where the defendant has engaged in standardized conduct towards members of the

proposed class by mailing to them allegedly illegal form letters or documents, the commonality

requirement is generally met.  *See id.; Chakejian v. Equifax Inf. Srvs., Inc.*, 256 F.R.D. 492, 497

(E.D. Pa. 2009); *McCall*, 236 F.R.D. at 250.  As stated by Judge Davis of this Court, "Because

[class representative's claims] are based entirely upon the uniform, non-individualized content of

defendants' standardized debt collection letters, [the FDCPA claims] are factually and legally common to the proposed classes." *Jordan*, 237 F.R.D. at 138.

Here, all members of the putative Class received a collection letter during the Class Period substantially identical to the one received by Plaintiff Harlan. The presence of the number, contrasted with the alternative of continued collection and payment, implies that a phone call is an appropriate way to dispute a debt, when that is not the case in the Third Circuit. *See Caprio*, 709 F.3d 142. Each class member received the same form letter, and the questions of law are identical among all. *Jordan*, 237 F.R.D. at 138; *McCall*, 236 F.R.D. at 250.

Based on the foregoing, there are common issues of fact and law arising out of NSA's form collection letter to the putative Class during the Class Period, thereby satisfying the commonality requirement.

### 3. Rule 23(a)(3) – Typicality is Met as Ms. Harlan Presses the Same Claim as Every Member of the Class

Rule 23(a)(3) requires that the claims of the named plaintiff be typical of the claims of the Class. A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other Class Members and his or her claims are based on the same legal theory. *Baby Neal*, 43 F.3d at 57. The typicality requirement may be satisfied even if there are some factual distinctions between the claims of the named plaintiff and those of other Class Members. *Id.* at 57-58; *Stewart v. Associates Consumer Discount Co.*, 183 F.R.D. 189, 196 (E.D. Pa. 1998). Here, all Class Members received a form collection letter substantially identical to the one received by Ms. Harlan. This uniform collection letter to members of the Class forms the basis of the class claim.

Typicality is inherent in the class definition, *i.e.*, each of the Class Members were subjected to the same letter and same violation as the named Plaintiff. All Class Members' claims arise from

9

the same practices by Defendant which gave rise to Harlan's claims – each Class Member was sent a collection letter from NSA with the same inconspicuous and overshadowed validation rights notice. *See McCall*, 236 F.R.D. at 250. This prong is especially easy to meet here because the claim does not turn on Ms. Harlan's own subjective reaction to the letter, but only that of the hypothetical least sophisticated consumer. *Id.* There are no unique facts or circumstances that would render Ms. Harlan atypical. The typicality requirement is met.

### 4.   Rule 23(a)(4) – Ms. Harlan and Her Counsel are Adequate

Rule 23 also requires that the named plaintiff provide fair and adequate protection for the interests of the Class. Fed. R. Civ. P. 23(a)(4). This requirement "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Allen v. Holiday Universal*, 249 F.R.D. 166, 180 (E.D. Pa. 2008) (Pratter, J.) (citing *Baby Neal,* 43 F.3d at 55). Satisfying this requirement involves two factors: (1) whether plaintiff's counsel is qualified, experienced and generally able to conduct the proposed litigation, and (2) whether the plaintiff has interests antagonistic to those of the class. *See Allen*, 249 F.R.D. at 180; *McCall*, 236 F.R.D at 250; *Lake*, 156 F.R.D. at 624. Both prongs are readily met here.

Ms. Harlan is represented by counsel experienced in consumer class action litigation. Cary L. Flitter and Flitter Lorenz, P.C. have been appointed as competent counsel by this Court and others in well over a dozen consumer class actions. Flitter serves on the adjunct faculty (consumer protection law) at Temple University's Beasley School of Law and Widener University School of Law, and is co-author of *Pennsylvania Consumer Law*, Geo. Bisel Publishing Co. A full statement of qualifications is included within the Certification of Cary L. Flitter attached hereto as Exhibit "5". Andrew M. Milz, Esquire will also represent Ms. Harlan and the Class. Mr. Milz is an

associate of the Flitter Lorenz firm where he has worked on consumer credit litigation, including several class action matters under the federal consumer protection laws. Milz is a published author and lecturer on consumer law issues, with trial and appellate experience in consumer protection and class action law. (Exhibit "6" hereto, Milz Certification).

There is also nothing to suggest that Plaintiff Harlan has any interest antagonistic to the Class. Ms. Harlan is prepared to vigorously pursue this lawsuit filed on behalf of herself and the Class of Philadelphia, Pennsylvania residents designated in the Complaint. There are no individualized issues, for example, of reliance or intent, or defenses unique to Ms. Harlan. Given the identical nature of the claims and class damages between the Plaintiff and the Class Members, there is no potential for conflicting interests in the Class action. *See Allen*, 249 F.R.D. at 180

Plaintiff respectfully submits that the adequacy prong is readily met, as are all of the elements of Rule 23(a).

### 5.   Rule 23(b)(3) – Common Questions of Law or Fact Predominate

Rule 23(b)(3) requires that the questions of law or fact common to all members of the Class predominate over questions pertaining to individual members. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). This criterion is normally satisfied when there is an essential common factual link between all Class Members and the Defendant for which the law provides a remedy. *See Lake*, 156 F.R.D. at 625. In this case, the "common nucleus of operative fact" is that all Class Members were sent collection letters from NSA that contained the same validation rights notice placed on the reverse side in an inconspicuous manner, physically and substantively overshadowed by other more prominent instructions in the letter. *See McCall*, 236 F.R.D. at 254 (concluding that the "question of whether the letter would have been deceiving to the least sophisticated consumer is common to claims of all class members").

Predominance is generally established in cases dealing with the legality of standardized documents and practices because the document is the focal point of the analysis. *McCall*, 236 F.R.D. at 254; *Seawell*, 235 F.R.D. at 67 (FDCPA class, predominance readily met). Here, the claims of the Class arise from the same letter and the same practices of Defendant NSA.

In addition, there is a uniform statutory damages provision under the FDCPA for class action matters. 15 U.S.C. § 1692k(a)(2); *Colbert v. Trans Union Corp.*, 1995 WL 20821, *3 (E.D. Pa. Jan. 12, 1995) (observing "the [FDCPA] provides for class-wide awards, obviating the need for calculating individual damages). No concern is present over the damage calculation – the statutory damage formula is uniformly applied across the class. 15 U.S.C. §1692k(a)(2); *compare Behrend*, 133 S. Ct. 1426 (complex damage matrix may impede predominance). Both the issues of fact and the issues of law are straight forward, and predominate.

### 6. <u>Rule 23(b)3 – A Class Action is Superior to Other Available Methods to Resolve this Controversy</u>

Superiority is the final element of class certification pursuant to Rule 23(b)(3). *In re Prudential Ins. Co. of America Sales Practices Litigation*, 148 F.3d 283, 315 (3d Cir. 1998); *Lake*, 156 F.R.D. at 625. The superiority element requires courts "to balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods of adjudication.'" *MERSCORP*, 298 F.R.D. at 216 (*citing In re Community Bank of N. Va.*, 418 F.3d at 309). Efficiency is a primary focus in determining whether the class action is the superior method for resolving the controversy presented. *Id.; Lake*, 156 F.R.D. at 625-26. It is proper for a court, in deciding the best available method, to consider the "... inability of the poor or

uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Lake,* 156 F.R.D. at 626.

In this case, there is no better method available for the adjudication of the claims which might be brought by each individual debtor subjected to Defendant's practices. Class actions are simply a more efficient and consistent means of trying the legality of a form collection notice. *Jordan,* 237 F.R.D. at 139-40; *Tenuto,* 2000 WL 1470213 at *4.

The Third Circuit has recognized the efficacy of FDCPA class actions where the individual's claim is small:

> A significant benefit to claimants who choose to litigate their individual claims in a class-action context is the prospect of reducing their costs of litigation, particularly attorney's fees, by allocating such costs among all members of the class who benefit from the recovery." The Supreme Court also commented that "[c]lass actions ... may permit the plaintiffs to pool claims which would be uneconomical to litigate individually. For example, this lawsuit involves claims averaging about $100 per plaintiff; most of the plaintiffs would have no realistic day in Court if a class action were not available." This "[c]ost-spreading can also enhance the means for private attorney general enforcement and the resulting deterrence of wrongdoing."

*Weiss,* 385 F.3d at 344-45. One of the primary functions of the class suit is to provide a device for vindicating claims, which, taken individually, are too small to justify legal action but which are of significant size if taken as a group. *Id.*; *Lake,* 156 F.R.D. at 628-29.

As one Court observed:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves of this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997), *quoted with approval in Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997); *accord Weiss*, 385 F.3d at 344-45.  Here, there will be a Class Settlement Fund of $22,200.00.  At that figure, each Class Member will receive a check for $100.00.  This is an excellent recovery and a superior way to proceed.

## IV.   THE CLASS SETTLEMENT SATISFIES THE REQUIREMENTS FOR PRELIMINARY APPROVAL

### A.   Standards for Preliminary Approval

When a proposed class-wide settlement is reached, it must be submitted to the Court for approval.  Fed. R. Civ. P. 23(e); *In re Flonase Antitr. Litig.*, 291 F.R.D. 93, 98 (E.D. Pa. 2013); *Oslan*, 232 F. Supp. 2d at 439-40.  The procedure for approval of a proposed Class Action Settlement involves a two-step process: (1) a "preliminary approval" order; and (2) a "final approval" order after notice of the settlement is provided to the class and a hearing to consider the fairness of the proposed settlement has been held.  *See* MANUAL FOR COMPLEX LITIGATION, Fourth (2004) ("MCL") §§ 21.632; *Gates v. Rohm and Haas Co.*, 248 F.R.D. 434, 438 (E.D. Pa. 2008) (Pratter, J.).

In considering preliminary approval, courts make an initial evaluation of the fairness of the settlement, prior to notice.  Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the Class and falls within the range of possible approval, preliminary approval is warranted.  *Id.* at 439; *MCL* 4th § 21.632.   When determining preliminary approval, the issue before a court is whether the proposed settlement appears fair, reasonable and adequate.  *Gates*, 248 F.R.D. at 438.  In undertaking its analysis, courts give substantial weight to the experience of the attorneys who prosecuted the case and negotiated the settlement.  *See In re Auto Refinishing Paint Antitr. Litig.*, 2003 WL 23316645 at *2 (E.D. Pa.

Sept. 15, 2003) ("[I]t is appropriate to give deference [at preliminary approval] to the recommendations of experienced attorneys, who have engaged in arms-length settlement negotiations, in making this determination.").

There is a presumption in favor of voluntary settlement agreements. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010). "This presumption is especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'" *Id.* (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)).

### B. <u>Preliminary Approval Should be Granted</u>

#### 1. <u>The Settlement was Reached After Arms-Length Negotiations</u>

This case was filed on October 4, 2013 and involved hotly-contested motion practice over the merits. Defendant filed a motion to dismiss, arguing Plaintiff failed to state a claim under the FDCPA. Plaintiff successfully opposed, and the Court denied NSA's Rule 12(b)(6) motion by Opinion and Order dated April 14, 2014. Thereafter, NSA sought reconsideration and (alternatively) an interlocutory appeal, engendering additional briefing another Order from the Court denying the reconsideration motion. Written class and merits discovery was propounded by Plaintiff and answered by Defendant. With Plaintiff's class certification deadline approaching, and certainly more contentious litigation (including a possible appeal) on the horizon, the parties attempted to negotiate a settlement to the litigation. After informally negotiating for several weeks, an agreement was reached in principle. (*See* Certification of Cary L. Flitter, Esq., Exhibit "5" at ¶ 27). The parties negotiated the cash relief, the content of the proposed Class Notice, the identity of the *cy pres* beneficiaries among other discrete issues. Defendant also agreed to modify its letter in order to comply with the Act. (Exhibit "2", Sett. Agrmt. ¶ 15(E)). The litigation, as

well as the settlement negotiations resulted in an Agreement which was the product of serious, informed, non-collusive negotiations among counsel.

### 2.   The Settlement is Fair and Contains no Other Deficiencies

The consideration provided for in the Settlement Agreement is substantial.   If this settlement is approved at $22,200.00 for the Class, each Class Member can expect to receive a check for $100.00 for receiving Defendant's collection letter.  No actual damages were sought by this class case.  This is well above the best-case classwide recovery, and represents an excellent result – one that exceeds recoveries in many other FDCPA class cases settled and approved in this Circuit.  *See e.g. Little-King v. Hayt & Landau,* 2013 WL 4874349 (D.N.J. Sept. 10, 2013) ($7.87 per class member); *Bonett v. Educ. Debt Servs., Inc.*, 2003 WL 21658267 (E.D. Pa. May 9, 2003) ($77 per class member); *Oslan,* 232 F.Supp.2d 436 ($62 per class member).

Plaintiff will request attorney fees and litigation costs in the amount of $44,450.00.  The payment of fees and costs is expressly called for under the FDCPA, 15 U.S.C. § 1692k(a)(3). These statutory counsel fees are designed to encourage competent counsel to accept fee-shifting cases on a contingent basis. *See Graziano,* 950 F. 2d at 111-13.  There is no requirement that the amount of attorney fees awarded be proportionate to the amount of recovery. *Morris v. I.C. Sys., Inc.*, 2009 WL 1362594 (E.D. Pa. May 15, 2009).  Class counsel's fees alone far exceed this amount, but Counsel has agreed to cap its request to facilitate settlement.  NSA has agreed to pay and not oppose the fees and costs sought here.  (Plaintiff's motion for approval of attorney fees and costs will accompany the motion for final approval of the class settlement.).

NSA has also agreed to pay Ms. Harlan $1,000.00 for her individual statutory damages under the FDCPA as well as an incentive award of $1,000.00.  As stated by Judge Rufe in an FDCPA case, such awards are "surely proper to provide reasonable incentives to individual

plaintiffs whose willingness to participate as lead plaintiffs allows class actions to proceed and so confer benefits to broader classes of plaintiffs." *Rosenau v. Unifund Corp.*, 646 F. Supp. 2d 743, 755 (E.D. Pa. 2009) ($1,000 in statutory damages plus $3,000 incentive award approved in FDCPA case); *Orloff*, 2004 WL 870691 ($5,000 incentive in FDCPA case).

In exchange for the above consideration, NSA obtains a release of class member claims for damages stemming from the offensive collection letter.   Importantly, the release is narrowly tailored only to those particular claims arising from the challenged letter.   (See Exhibit "2", Sett. Agrmt. at ¶ E).

The aggregate settlement contains a substantial cash benefit to Class Members, contains no obvious deficiencies, and should be approved.

### 3.   The Settlement is Within the Range of Reasonableness

The reasonableness of a proposed settlement depends in part upon a comparison of the present value of the damages the plaintiff would recover if successful, discounted by the risks of not prevailing.  *Boone v. City of Philadelphia*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009) (*citing In re General Motors*, 55 F.3d at 806).

In a class action case, the FDCPA limits recovery to the lesser of $500,000.00 or 1% of the defendant's net worth, 15 U.S.C. § 1692k(a)(2); *See Rosenau*, 646 F. Supp. 2d at 753 (discussing risks of establishing net worth in FDCPA case).  NSA has produced a balance sheet reflecting net worth of approximately $534,000.00.[1]  This would cap class statutory damages at 1% or $5,340 to be shared by the 222 class members.  Accordingly, if Plaintiff were able to convince a jury at trial that the level of noncompliance with the FDCPA was frequent, pervasive and intentional as to command the maximum statutory award, each of the 222 Class Member would only be entitled to

---

[1]     NSA has taken the position that its net worth is actually lower still, at $311,954.27.  In reaching that sum, NSA has excluded its balance sheet goodwill from its calculation – an issue on which the courts are split.

receive about $24.00.   By contrast, the settlement here would <u>exceed</u> the best possible class

recovery at trial, yet without the delay, uncertainty and cost.

### 4.   Class Counsel Recommends the Settlement

Class Counsel has extensive experience in class action litigation in the areas of consumer

protection law and the FDCPA, and are thoroughly familiar with the factual and legal issues of the

case.   (*See* Flitter Cert., Exhibit "5").   The Settlement followed a thorough investigation by Class

Counsel into the merits of the case, litigation and discovery.   Counsel twice briefed the merits of

Ms. Harlan's claim – defending it from Defendant's Motion to Dismiss, and then Defendant's

Motion for Reconsideration.   Counsel have analyzed each of Defendant's arguments against the

merits of Ms. Harlan's claim, Defendant's affirmative defenses, and any potential arguments

against class certification, and has thus developed an appreciation about the time and effort that

future, prolonged litigation would entail.   (Id.).

Defendant attacked the merits of Plaintiff's claim under Section 1692g in two Motions.

Plaintiff briefed and opposed all of NSA's arguments during the litigation and is satisfied she has

the better of the arguments about each.   However, litigation comes with inherent risks that must

be weighed against the strengths of the Class's case.   Given Defendant's strategy to date, continued

litigation would certainly entail further dispositive motion practice, trial and possible appeal (each

with attendant briefing),[2] and the passage of months and years before Class Members would see

any relief from this case.

For all these reasons, Class Counsel recommend the settlement for preliminary approval

and issuance of notice.

---

[2]        Indeed, Defendant already asked the Court to certify its April 14, 2014 Order for interlocutory appeal – a Motion that was denied.

## V.   **CLASS NOTICE**

With the Settlement Agreement and this Motion, Plaintiff submits a proposed form of Notice to the Class.  A true and correct copy of the proposed Class Notice is appended hereto as Exhibit "3".  (Of course, the blanks for dates will be filled in before mailing).  In plain-English, the Notice informs Class Members regarding (a) formation of the Class; (b) the Class definition; (c) claims, defenses and issues in the case; (d) terms of the proposed settlement; (e) the request for an award of attorney's fees and expenses to Class Counsel; (f) the agreed individual settlement payment to representative Plaintiff; (g) the Class Member's right to opt-out, and thereby not participate in the proposed settlement; (h) Class Member's right to appear and object to the proposed settlement; (i) the time, date and location of the final approval hearing; and (j) Class Member's right to appear at the final approval hearing in favor of or in opposition to the proposed settlement.

The proposed Notice comports with the requirements of Rule 23(c) and 23(e) as amended, and with the Court of Appeals' decision in *Wachtel v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 185 n.6 (3d Cir. 2006), recommending plain-English class notices.  The Notice is clear and reader friendly, and provides Class Members with sufficient information to make an intelligent decision as to whether to remain in the Class, opt-out, or object to any aspect of the proposed settlement.  Plaintiff has looked to, indeed borrowed from, the recommended notices provided by the Federal Judicial Center's website, www.fjc.gov.  Administration of Notice, opt-outs, objections and settlement checks will be handled by First Class, Inc. an experienced Claims Administrator based in Chicago.  (Exhibit "2", Sett. Agrmt. ¶ 6).

Plaintiff proposed Notice by first class mail, which comports with Fed. R. Civ. P. 23(c)(2) requiring the best notice practicable under the circumstances. *See Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 113 (E.D. Pa. 2005) (approving mail notice in FDCPA class settlement).

## VI.    **CONCLUSION**

The proposed settlement puts an end to this litigation, and falls well within the range of a fair, reasonable and adequate award. Preliminary approval should be granted, and the Class Notice approved and directed in the form proffered. Defendant consents to preliminary approval. Further, the proposed settlement Class meets the requirements of Rules 23(a) as well as Rule 23(b)(3). Plaintiff Denise Harlan respectfully requests that the Court preliminarily approve the Class settlement pursuant to Rule 23.

Date:  8/15/14

/s/ Cary L. Flitter
CARY L. FLITTER
THEODORE E. LORENZ
ANDREW M. MILZ

FLITTER LORENZ, P.C.
450 N. Narberth Avenue, Suite 101
Narberth, PA 19072
(610) 822-0782
Attorneys for Plaintiff and the Class

20

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENISE HARLAN, on behalf of herself and all others similarly situated,<br>　　　　　　　　　　　Plaintiff,<br><br>　　　　vs.<br><br>TRANSWORLD SYSTEMS, INC., d/b/a NORTH SHORE AGENCY, INC.<br>　　　　　　　　　　　Defendant. | NO. 13-cv-05882(GP)<br><br><br><br><br><br>CLASS ACTION |

## CERTIFICATE OF SERVICE

I, CARY L. FLITTER, hereby certify that a copy of Plaintiff's Motion for Preliminary

Approval of Class Settlement (Uncontested) has been electronically filed with the Clerk of Court

using the CM/ECF system, which sent notification of such filing to:

Aaron Easley, Esquire
SESSIONS, FISHMAN, NATHAN & ISRAEL, LLC
3 Cross Creek Drive,
Flemington, NJ 08822-4938

Said document is available for viewing and downloading from the ECF system.

Date:  August 15, 2014　　　　　　　　　　　/s/ Cary L. Flitter
　　　　　　　　　　　　　　　　　　　　　CARY L. FLITTER