IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DENISE HARLAN,** | : | |
| *individually and on behalf of all* | : | |
| *others similarly situated*, | : | **CIVIL ACTION** |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| **TRANSWORLD SYSTEMS, INC., d/b/a,** | : | **No. 13-5882** |
| **NORTH SHORE AGENCY, INC.** | : | |
| *Defendant*. | : | |

**M E M O R A N D U M**

PRATTER, J.                                                                                                                     SEPTEMBER 8, 2014

Denise Harlan, on behalf of herself and a putative class, sued Transworld Systems, Inc., also known as North Shore Agency, Inc. ("North Shore"), for North Shore's alleged violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692–1692p. Ms. Harlan alleges that North Shore violated a provision of the FDCPA that requires debt collectors to provide recipients of certain debt collection communications notice of their "validation rights," or rights to challenge the claimed debt combined with information about how to do so, *see id.* § 1692g(a). Ms. Harlan and North Shore have reached a settlement agreement and now seek this Court's preliminary approval and class certification ("Settlement Agreement," Docket No. 25-3).

The parties' dispute, described and analyzed in detail in the Court's April 14, 2014 Amended Memorandum ("April 14, 2014 Memorandum," Docket No. 14), available at *Harlan v. Transworld Systems, Inc.*, No. 13-5882, 2014 WL 1414508 (E.D. Pa. Apr. 14, 2014), concerns North Shore's mailing of a particular form collection letter ("Subject Letter") to Ms. Harlan and, according to North Shore, approximately 222 others with addresses in Philadelphia, Pennsylvania. The notice of validation rights was printed on the reverse side of the Subject Letter

and was, Ms. Harlan alleges, inconspicuous and therefore in violation of the FDCPA. The Court agreed with Ms. Harlan, denied North Shore's motion to dismiss, *see id.*, and set case deadlines. North Shore vigorously continued to argue that the notice of validation rights in the Subject Letter was adequate under the FDCPA and moved for reconsideration or, alternatively, interlocutory appeal (*see* Docket No. 17). When the Court denied that motion and reaffirmed its holding (*see* Docket No. 21), the parties, still hotly disputing whether North Shore violated the FDCPA but "wish[ing] to avoid the expense and uncertainty of litigation," Settlement Agreement pmbl., at 2, entered into fruitful settlement negotiations.

Because it resolves the rights of absent parties, a settlement of a class action is not effective until approved by a court after "notice in a reasonable manner to all class members who would be bound by the proposal," Fed. R. Civ. P. 23(e)(1); *see, e.g.*, *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 349-50 (3d Cir. 2010), and "only after a hearing and on finding that it is fair, reasonable, and adequate," Fed. R. Civ. P. 23(e)(2).[1] If the reviewing court has not yet

---

[1] Federal Rule of Civil Procedure 23(e) provides, in full:

> **(e) Settlement, Voluntary Dismissal, or Compromise.** The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>
> (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
>
> (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
>
> (4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

certified the class, it also "must determine by order" whether to do so. *Id.* 23(c)(1). If the court concludes that the class should be preliminarily certified for purposes of the settlement, it must direct that members of the potential class be given the opportunity to request to be excluded, so that, for example, they may be able to pursue claims individually without being bound by the proposed settlement agreement. *See id.* 23(b)(2)(B)(vi), (e)(4).

After considering Ms. Harlan's Motion for Preliminary Approval of Class Settlement ("Mot."; Docket No. 25) and a hearing on September 2, 2014, and for the reasons set out below, the Court concludes that the class should be preliminarily certified and the Settlement Agreement preliminarily approved, subject to a final fairness hearing.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

In its April 14, 2014 Memorandum, the Court concluded that the Subject Letter violated the Fair Debt Collection Practices Act. Instead of restating those facts and conclusions here, the Court incorporates the April 14, 2014 Memorandum (Docket No. 14) and May 16, 2014 Order denying reconsideration (Docket No. 21) by reference, *see Harlan*, 2014 WL 1414508.[2]

The proposed Settlement Agreement defines the Subject Letter as

a letter sent by [North Shore] in substantially the form of the [North Shore] letter dated October 12, 2012, attached to Plaintiff's complaint as Exhibit A, where the letter was the initial communication from [North Shore] in which the statutory section 1692 validation notice was printed on the reverse side of the letter in [a]n uppercase and lowercase type, among paragraphs which were not indented or spaced, and placed a[m]ong other copy that was capitalized, and the phrase

---

(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Fed. R. Civ. P. 23(e).

[2] The Subject Letter is reproduced in the April 14, 2014 Memorandum.

"NOTICE-SEE REVERSE SIDE FOR IMPORTANT INFORMATION" in all capital letters was on the front of the letter.

Settlement Agreement ¶ 1(C).

The Settlement Agreement proposes a settlement class consisting of Ms. Harlan and those others who, according to North Shore's records, have "addresses in Philadelphia, Pennsylvania" and "were sent the Subject Letter where the underlying debt was incurred primarily for personal, family or household use, where the letter(s) bear a date from October 12, 2012 to October 4, 2013"[3] ("Settlement Class" or "Class")—approximately 223 individuals in all. Settlement Agreement ¶ 1(D). The Settlement Agreement would resolve, as between North Shore and the Settlement Class members,

> any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses, and attorneys' fees of any nature whatsoever, whether based on any federal law (including the FDCPA), state law, common law, or any other type or form (whether in contract, tort, or otherwise, including statutory, common law, property, and equitable claims), which Plaintiff or any Pennsylvania Class Member has arising out of the Subject Letter, including, but not limited to . . . [c]laims arising out of the content of the Subject Letter.

Settlement Agreement ¶ 1(E) (this definition); *see id.* ¶ 14 (provision releasing North Shore from liability). In exchange for this release, North Shore would agree to:

- Establish a $22,200.00 settlement fund (hereinafter, "Settlement Amount") from which each Class member will receive a $100 check by U.S. mail. Settlement Agreement ¶ 15(A), (B).[4]

- Award any remainder of the $22,200 (whether from uncashed settlement checks or Class members who cannot be located) *cy pres* to Clarifi, a nonprofit organization

---

[3] The FDCPA's statute of limitation is one year. 15 U.S.C. § 1692k(d). Ms. Harlan filed her Complaint in October 2013.

[4] This provision applies to Class members "who do not exclude themselves from the class and . . . whose class notice is not returned undeliverable and without a forwarding address." Settlement Agreement ¶ 15(A) (emphases omitted).

4

> dedicated to financial literacy in the Delaware Valley.[5] Settlement Agreement ¶ 15(C).

- Pay Ms. Harlan, separate and apart from her $100 award as a Class member and without reducing the Settlement Amount, an individual settlement sum of $1,000, consistent with 15 U.S.C. § 1692k(a)(2)(B)(i),[6] and an additional $1,000 incentive payment. Settlement Agreement ¶ 15(D).

- Again without reducing the Settlement Amount, pay the costs of notice to the Class and administration of the Settlement Amount. Settlement Agreement ¶ 6.

- "[R]evise the layout of the [Subject Letter] to make the [15 U.S.C. §] 1692g notice more prominent than it was previously." Settlement Agreement ¶ 15(E).

Further, consistent with 15 U.S.C. § 1692k(a)(3),[7] North Shore will pay Class Counsel, Cary L. Flitter, Theodore E. Lorenz, and Andrew M. Milz, of Flitter Lorenz, P.C., $44,450 in attorneys' fees and costs ($43,750.00 representing payment of fees and $700 in payment for costs[8]). Settlement Agreement ¶ 16.

---

[5] Clarifi, 1608 Walnut St., 10th Floor, Philadelphia, PA 19103; http://www.clarifi.org.

[6] *See* 15 U.S.C. § 1692k(a)(2)(B)(i) ("[A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person . . . in the case of a class action, [for] (i) such amount for each named plaintiff as could be recovered under subparagraph (A) . . . ."); *id.* § 1692k(a)(2)(A) ("in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000").

[7] *See* 15 U.S.C. § 1692k(a)(3) ("[A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person . . . in the case of any successful action to enforce the foregoing liability, [for] the costs of the action, together with a reasonable attorney's fee as determined by the court."). *See also generally* Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.").

[8] Counsel has reported $550 in costs as of September 8, 2014. Counsel has stated that she anticipates approximately $150 in additional costs.

## II. PRELIMINARY APPROVAL AND CLASS CERTIFICATION STANDARDS

The overall approval process for proposed class action settlement agreements generally proceeds in two steps. First, the court holds a preliminary approval hearing in order to (a) ensure that no obvious problems exist; (b) if necessary, determine whether the proposed class should be certified for settlement purposes; and (c) evaluate the parties' proposed plan for notifying class members of the settlement and their right to opt out or make claims against the settlement amount. Then follows a final approval hearing, at which class members, having received notice of the proposed settlement, may voice any objections. *See generally, e.g.*, *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 777-78 (3d Cir. 1995); *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 438-39 (E.D. Pa. 2008); David F. Herr, *Annotated Manual for Complex Litigation* § 21.632 (West, 4th ed. 2013).[9]

In requiring the court to screen for obvious problems, the preliminary approval inquiry asks whether "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D.

---

[9] As the Third Circuit Court of Appeals has explained:

> Usually, the request for a settlement class is presented to the court by both plaintiff(s) and defendant(s); having provisionally settled the case before seeking certification, the parties move for simultaneous class certification and settlement approval. Because this process is removed from the normal, adversarial, litigation mode, the class is certified for settlement purposes only, not for litigation. Sometimes, as here, the parties reach a settlement while the case is in litigation posture, only then moving the court, with the defendants' stipulation as to the class's compliance with the Rule 23 requisites, for class certification and settlement approval. In any event, the court disseminates notice of the proposed settlement and fairness hearing at the same time it notifies class members of the pendency of class action determination. Only when the settlement is about to be finally approved does the court formally certify the class, thus binding the interests of its members by the settlement.

*Gen. Motors Corp.*, 55 F.3d at 776-78 (footnote omitted).

Pa. 2003) (citing *Gen. Motors Corp.*, 55 F.3d at 785-86); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 233 n.18 (3d Cir. 2001). Satisfaction of these factors establishes "an initial presumption of fairness," *In re Linerboard*, 292 F.Supp.2d at 638 (citing *Gen. Motors Corp.*, 55 F.3d at 785), but in assessing fairness, the court ultimately also considers

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 317 (3d Cir. 1998) (ellipses omitted) (quoting *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975)).

Because no class settlement can exist without a class, if the reviewing court has not yet certified a class, it must determine whether the proposed settlement class should be certified, *Amchem v. Windsor*, 521 U.S. 591, 620 (1997)—for settlement purposes only, of course—and the final certification decision must be left for the final fairness hearing.[10] The class must be "'currently and readily ascertainable based on objective criteria,' and a trial court must undertake a rigorous analysis of the evidence to determine if the standard is met." *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (2013) (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012)). The proposed class settlement must also satisfy the requirements of Federal Rule of Civil Procedure 23, *Amchem*, 521 U.S. at 620, which requires the proponents of class certification to

---

[10] At the preliminary approval stage, the Court may conditionally certify the class for purposes of providing notice. Herr, *supra*, § 21.632 ("The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)."). "By specifying certification for settlement purposes only, . . . the court preserves the defendant's ability to contest certification should the settlement fall apart." *Gen. Motors Corp.*, 55 F.3d at 786.

7

demonstrate that all of the requirements of Rule 23(a) are met—that is, that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a). Additionally, "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)," *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011). One option, under Rule 23(b)(3), allows a class action to be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3).

## III. DISCUSSION

Here, the Court concludes, the circumstances demonstrate that the Settlement Agreement is fair to the proposed Settlement Class and, therefore, that it should be preliminarily approved. The Court also concludes that the Class should be preliminarily certified for settlement purposes.

### A. Preliminary Approval

The Court finds that the parties have negotiated at arm's length. North Shore moved for dismissal of the suit and, even after the Court denied that motion, *see* Docket No. 14, *Harlan*, 2014 WL 1414508, North Shore moved for reconsideration or, in the alternative, interlocutory appeal (*see* Docket No. 17), and once again "hotly disputed" its liability under the FDCPA, Mot. 3. The Court denied the motion for reconsideration (*see* May 16, 2014 Order) and the parties

began written class and merits discovery while also considering "more contentious litigation (including a possible appeal)," Mot. 15.

There is also little question that the Settlement Agreement is fair and that there was sufficient discovery to allow counsel to assess the merits and risks of the case before agreeing to resolve the dispute. As the Court noted in its April 14, 2014 Memorandum, "in the Third Circuit, 'whether language in a collection letter contradicts or overshadows the validation notice is a question of law,'" *Harlan*, 2014 WL 1414508, at *3 n.4 (quoting *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 147 (3d Cir. 2013) (quoting *Wilson v. Quadramed Corp.*, 225 F.3d 350, 353 n.2 (3d Cir. 2000))). Accordingly, little factual development on the merits has been necessary, and in written fact discovery, North Shore has "represent[ed that] there are approximately 222 Class Members," or "persons with addresses in Philadelphia, Pennsylvania, who were sent the Subject Letter." Settlement Agreement ¶ 1(D).

If this matter were to proceed to trial, the most that class members could expect to recover, in the aggregate, would be "the lesser of $500,000 or 1 per centum of the net worth of the debt collector." 15 U.S.C. § 1692k(a)(B)(ii). Here, North Shore's maximum net worth appears to be approximately $534,000, Mot. 17 & n.1; one percent of that figure, and thus the statutory damages cap, is approximately $5,340. While the aggregate amount limit permits a court to award "such amount as the court may allow for [each] class member[], without regard to a minimum individual recovery," *id.*, $5,340 divided among 222 class members is only about $24.46. Under the Settlement Amount, by contrast, each class member will receive $100, in other words, four times that amount. As counsel point out, this amount "exceeds recoveries in many other FDCPA class cases settled and approved in this Circuit." Mot. 16 (citing *Little-King v. Hayt Hayt & Landau*, No. 11-5621, 2013 WL 4874349, at *3, 14 (D.N.J. Sept. 10, 2013)

($7.87 per class member); *Bonett v. Educ. Debt Servs., Inc.*, No. 01-6528, 2003 WL 21658267, at *7 (E.D. Pa. May 9, 2003) ($77.46 per class member); *Oslan v. Law Offices of Mitchell N. Kay*, 232 F. Supp. 2d 436, 443 (E.D. Pa. 2002) ($62 per class member)).[11]

The Settlement Amount is all that much fairer to the Class because of the litigation risks involved. Even assuming that Ms. Harlan would prevail if North Shore appealed, she would still have to establish $5,430 as one percent of North Shore's net worth, and there is risk in that enterprise, as well. *See* Mot. 17 & n.1 ("[North Shore] has taken the position that its net worth is actually lower still, at $311,954.27. In reaching that sum, [North Shore] has excluded its balance sheet goodwill from its calculation—an issue on which the courts are split."). All of these endeavors, from potential motion practice and appeal to resolving questions of fact, promise the expenditure of funds that might never be recovered.

Ms. Harlan does not claim, either for herself or the class, "any actual damage sustained . . . as a result of [North Shore's] failure" to provide adequate notice of validation rights. 15 U.S.C. § 1692k(a). In fact, imagining actual damages from the alleged statutory violation in this case takes a creative mind, indeed; for that reason, presumably, the Settlement Agreement releases North Shore from liability under "any and all claims . . . arising out of the content of the Subject Letter." Settlement Agreement ¶ 1(E). Thus, this litigation primarily concerns an allegation of a "technical statutory violation," *cf., e.g.*, *Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 630 (4th Cir. 1995), without consideration of how the Subject Letter may have harmed any given recipient, except with regard to how a letter might "threaten or

---

[11] Further, the restriction of the Class to individuals with Philadelphia addresses is to Class members' advantage because the total recovery will be divided under a smaller number of individuals than if the class were defined more broadly. The FDCPA limits class damages to "the lesser of $500,000 or 1 per centum of the net worth of the debt collector," 15 U.S.C. § 1692k(a)(B)(ii), without regard to the size or definition of the class.

encourage the least sophisticated debtor to waive his statutory right to challenge the validity of the debt," *Caprio*, 7099 F.3d at 152 (quoting *Terran v. Kaplan*, 109 F.3d 1428, 1434 (9th Cir. 1997)); *see also, e.g.*, *Harlan*, 2014 WL 1414508, at *4-11. Many Class members are likely to be unaware of their statutory rights, if even they would have suffered any harm from North Shore's alleged violation of those rights and would wish to bring suit. The proposed Settlement Agreement thus provides the Settlement Class with valuable consideration for what, for most individuals, is likely to be a technical violation that they did not know occurred.

Just as important is the "significant consideration" is that "Congress explicitly provided for class damages in the FDCPA." *Weiss v. Regal Collections*, 385 F.3d 337, 345 (3d Cir. 2004) (citing 15 U.S.C. § 1692k(a)(2)(B)). Here, Class members will receive far more than they would under the largest award permitted by statute—$100 for each member, as opposed to approximately $24 (or even only about $50, if only half of the Class members could be reached)—and do not even need to file a claim, so long as North Shore can locate them.[12]

---

[12] Further, the Court perceives no issue with the fact that the Settlement Agreement provides for greater recovery than the Court could permit to a class that were to prevail at trial. *See* 15 U.S.C. § 1692k(a)(B)(ii) (limiting aggregate class statutory damages to "the lesser of $500,000 or 1 per centum of the net worth of the debt collector"). Courts have approved settlement amounts greatly in excess of the statutory cap before, *e.g.*, *Oslan*, 232 F. Supp. 2d at 442-43 ($20,000 fund compared with $290 cap), and the FDCPA does not specifically address what types of compromises are reasonable. The calculus is, of course, different in the settlement context, when the parties are weighing the costs and benefits of continued litigation, and especially so when a putative class has been asserted. Here, in addition to providing North Shore with a broad release, as outlined above, the Settlement Agreement offers each Class member a reasonable sum of $100 with no requirement of effort on her part. In exchange, North Shore presumably hopes to bargain with Class members to remain in the Class instead of opting out of the Settlement Agreement pursuing damages individually in the hopes of greater recovery. *Cf. Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 225-26 (2d Cir. 2012) ("Given this contrast between the damages available to unnamed class members and those available to individual plaintiffs, it was all the more important that [a class member] receive adequate notice before being deprived of her individual right to sue."). Further, the extra amount is consistent with any potential contention that a particular Class member has suffered actual damages (for instance, because they repaid debt they dispute).

Further, Ms. Harlan's additional recovery of $2,000 is also reasonable under the FDCPA, which specifically provides that a named plaintiff in a class action can recover up to $1,000 in addition to her share of the class damages, *see* 15 U.S.C. § 1692k(a)(2)(B)(i); *id.* § 1692(k)(a)(2)(A). Given, moreover, that "it is surely proper to provide reasonable incentives to individual plaintiffs whose willingness to participate as lead plaintiffs allows class actions to proceed and so confer benefits to broader classes of plaintiffs," *Rosenau v. Unifund Corp.*, 646 F. Supp. 2d 743, 755 (E.D. Pa. 2009), the modest additional incentive award of $1,000 is reasonable.[13]

The Court also preliminarily finds Class counsel's request for attorneys' fees to be reasonable. Congress "intended the FDCPA to be self-enforcing by private attorney generals," *Weiss*, 385 F.3d at 345, who are, therefore, entitled to "an award of attorney's fees as a means of

---

[13] Notably, these additional monies that Ms. Harlan will receive do not come out of the $22,200 Settlement Amount. Other courts in this District have also approved such incentive awards less modest than the instant award. *See, e.g.*, *Orloff v. Syndicated Office Sys., Inc.*, No. 00-5355, 2004 WL 870691, at *7 (E.D. Pa. Apr. 22, 2004) ($5,000); *Bonett v. Educ. Debt Servs., Inc.*, No. 01-6528, 2003 WL 21658267, at *7 (E.D. Pa. May 9, 2003) ($4,000, and discussing similar awards).

The Court recognizes that some courts have required a named plaintiff, "to be entitled to an incentive award," to show, in addition, "(1) the risks that the named plaintiff undertook in commencing class action; (2) any additional burdens assumed by named plaintiffs but not unnamed class members; and (3) the benefits generated to class members through named plaintiff's efforts." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 473 (E.D. Pa. 2000). Here, the Court will not require Ms. Harlan to make any additional showing. Ms. Harlan (1) presumably took little risk in prosecuting this action; her counsel are now receiving, and had every expectation of receiving, if she prevailed, attorneys' fees paid for by North Shore. But she (2) certainly assumed the additional burden of prosecuting the litigation, however slight (e.g., meeting with her attorneys, providing the Subject Letter for their examination, etc.)—Class members, under the Settlement Agreement, must do nothing other than remain locatable to receive their $100. Finally, (3) the Class members have received a significant benefit of $100 for a technical statutory violation.

For these reasons, a $1,000 incentive fee is reasonable as encouragement to pursue relief on behalf of a class. Indeed, "[r]epresentative actions . . . appear to be fundamental to the statutory structure of the FDCPA. Lacking this procedural mechanism, meritorious FDCPA claims might go unredressed because the awards in an individual case might be too small to prosecute an individual action." *Weiss*, 385 F.3d at 345.

fulfilling Congress's intent," *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991); *accord Weiss*, 385 F.3d at 345. Thus, "the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs," 15 U.S.C. § 1692k(a)(3), and the amount of attorneys' fees is not unreasonable simply because it may be high compared to the statutory award or settlement amount, as here. *See, e.g.*, *Graziano*, 950 F.3d at 113-14 ("Indeed, several courts have required an award of attorney's fees even where violations were so minimal that statutory damages were not warranted. . . . [I]n a typical case under the [FDCPA], the court should determine what constitutes a reasonable fee in accordance with the substantial Supreme Court precedent pertaining to the calculation of reasonable attorney's fees."). Given the difficult legal issues involved in this case and Class counsel's extensive briefing, as well as Class counsel's representation that "Class counsel's fees alone far exceed [the $44,450 fees and costs proposed amount], but Counsel has agreed to cap its request to facilitate settlement," Mot. 16, the Court finds, for preliminary approval purposes, that this amount is fair and reasonable.

Finally, the Court observes that "the proponents of the settlement"—that is, Class counsel—"are experienced in similar litigation." *Gen. Motors Corp.*, 55 F.3d at 785. Messrs. Flitter and Milz, as described in further detail below, are experienced in prosecuting consumer class actions. *See also* Certification of Cary L. Flitter (Docket No. 25-6); Certification of Andrew M. Milz (Docket No. 25-7). Their recommendation accords with this Court's judgment that the Settlement Agreement is presumptively fair.

For the foregoing reasons, the Court finds that the Settlement Amount is within the range of reasonableness and that the relief provided, as to the Class, Ms. Harlan, and Class counsel, is presumptively fair for purposes of preliminary approval.

### B.      Preliminary Certification of the Class for Settlement Purposes

At the preliminary approval stage, if the court has not already certified the prospective settlement class, it must "determine that the requirements for class certification under Rule 23(a) and (b) are met." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 319 (3d Cir. 2011) (en banc) (quoting *Pet Food Prods.*, 629 F.3d at 341 (3d Cir. 2010)). The plaintiffs must satisfy all four Rule 23(a) factors—numerosity, commonality, typicality, and adequacy of representation; additionally, "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Dukes*, 131 S. Ct. at 2548.[14]

#### 1.      Rule 23(a)'s Requirements

The proposed Settlement Agreement easily meets Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation. First, "[n]o minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). North Shore has stated that there are 222 putative Class members in Philadelphia, Pennsylvania, in addition to Ms. Harlan, and has compiled their names and last known addresses. Because "the class is so numerous that joinder of all members is impracticable," Fed. R. Civ. P. 23(a)(1), Rule 23(a)'s first prong is satisfied.

Second, the named plaintiff(s) must show that they "share at least one question of fact or law with the grievances of the prospective class." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372,

---

[14] An additional requirement for class certification not mentioned in Rule 23 is ascertainability of the class, *see generally, e.g.*, *Carrera*, 727 F.3d 300; "[t]he method of determining whether someone is in the class must be 'administratively feasible,'" *id.* at 307 (quoting *Marcus*, 682 F.3d at 594)). These requirements are clearly met here, because North Shore has already ascertained, from its records, the names and last known addresses of all those with addresses in Philadelphia, Pennsylvania, to whom it mailed the Subject Letter.

382 (3d Cir. 2013) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)). Rule 23(a)(2)'s commonality requirement is satisfied where, as here, the named plaintiff has claimed FDCPA violations "based entirely upon the uniform, non-individualized content of defendants' standardized debt collection letters." *Jordan v. Commw. Fin. Sys., Inc.*, 237 F.R.D. 132, 138 (E.D. Pa. 2006). Third, Rule 23(a)(3)'s typicality requirement is satisfied for the same reason: "cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims," *Baby Neal*, 43 F.3d at 58 (citation omitted). Ms. Harlan's claimed injury, a statutory violation, is identical to the proposed Class members'.

Fourth and finally, Ms. Harlan and Class counsel "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent" *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (quoting *Amchem*, 521 U.S. at 625), and "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class," *id.* (quoting *Baby Neal*, 43 F.3d at 55). Thus, the Court must determine "whether the representatives' interests conflict with those of the class and whether the class attorney is capable of representing the class." *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 185 (3d Cir. 2001). These requirements raise no concern here. Ms. Harlan's counsel, Cary L. Flitter and Andrew M. Milz, a named partner and an associate, respectively, of Flitter Lorenz, P.C., together have extensive experience litigating class actions under federal consumer protection laws such as the FDCPA, and Mr. Flitter is an adjunct faculty member on consumer protection law at Temple University's Beasley School of Law and Widener University School of

Law and has coauthored a text on Pennsylvania consumer law. *See* Certification of Cary L. Flitter (Docket No. 25-6); Certification of Andrew M. Milz (Docket No. 25-7). The Court has no reason to believe that the generous proposed Settlement Amount here is anything less than the product of Ms. Harlan's vigorous pursuit of this lawsuit on behalf of both herself and the proposed Class. *See also, e.g.*, *Allen v. Holiday Universal*, 249 F.R.D. 166, 180 (E.D. Pa. 2008) ("At a fundamental level, the claims of the named plaintiffs and putative class members are based on the same alleged course of misconduct . . . and the same legal theories, notwithstanding any individual factual differences. This fundamental underlying similarity is sufficient to ensure that the named plaintiffs will advance the interests of the Class.").

### 2. Rule 23(b)'s Requirements

The parties have elected to proceed under Rule 23(b), which requires the court to

> find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> **(A)** the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> **(B)** the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> **(C)** the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> **(D)** the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). *See also generally Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013).

Although "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)," *Comcast*, 133 S. Ct. at 1432, it is easily met here. In fact, as the Supreme Court recently explained, Rule 23(b)(3)'s four enumerated considerations are designed as "procedural safeguards" "for situations in which class-action treatment is not [so] clearly called for," *id.* (internal quotation marks omitted); they constitute a "nonexhaustive list of factors pertinent to a

court's 'close look' at the predominance and superiority criteria" in order to ensure that "[c]ommon questions . . . 'predominate over any questions affecting only individual members'; and class resolution [is] 'superior to other available methods for the fair and efficient adjudication of the controversy,'" *Amchem*, 521 U.S. at 615 (quoting Fed. R. Civ. P. 23(b)).

Here, as described earlier and in this Court's April 14, 2014 Memorandum, there is one legal question: whether, as a matter of law, North Shore's Subject Letter complied with the Fair Debt Collection Practices Act's notice requirement. This Court resolved that question in the negative, *see Harlan*, 2014 WL 1414508, and the parties continue to contest the issue notwithstanding their Settlement Agreement. That question is common to all members of the proposed Class because, by definition, all Class members received the Subject Letter and therefore suffered a statutory violation, even if not actual damages. Thus, in fact, outside of the possibility that certain class members suffered actual harm from the invalid notice, the proposed Class members' claims are identical and therefore both are common and predominate.

As noted earlier, Congress's very scheme, in contemplating class action litigation for the vindication of the consumer protection rights it created, defines this type of litigation as desirable and efficient. "Congress explicitly provided for class damages in the FDCPA," *Weiss*, 385 F.3d at 345, and added fee shifting to deputize private attorneys general, *see id.*; *Graziano*, 950 F.3d at 113-14. "Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action." *Lake v. First Nationwide Bank*, 156 F.R.D. 615, 626 (E.D. Pa. 1994).

Moreover, especially in the FDCPA context, there is a meaningful risk that recipients of deficient letters may be too "poor or uninformed to enforce their rights." *Haynes v. Logan*

*Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974). Indeed, "the debt validation provisions of [15 U.S.C. §] 1692g were included by Congress to guarantee that consumers would receive adequate notice of their rights under the law," *Wilson*, 225 F.3d at 354; *accord, e.g.*, *Caprio*, 709 F.3d at 148; accordingly,

> "[i]n order to comply with the requirements of section 1692g, more is required than the mere inclusion of the statutory debt validation notice in the debt collection letter—the required notice must also be conveyed effectively to the debtor." *Wilson*, 225 F.3d at 354 (citing [*Miller v.*] *Payco-General* [*Am. Credits, Inc.*], 943 F.2d [482,] 484 [(4th Cir.1991)]. The validation notice accordingly "must be in print sufficiently large to be read, and must be sufficiently prominent." *Graziano*, 950 F.2d at 111 (citing *Swanson v. Southern Oregon Credit Serv.*, 869 F.2d 1222, 1225 (9th Cir. 1988)). "More importantly for present purposes, the notice must not be overshadowed or contradicted by accompanying messages from the debt collector." *Id.* In other words, "a collection letter will not meet the requirements of the Act where the validation notice is printed on the back and the front of the letter does not contain any reference to the notice" or, more generally, where "the validation notice is overshadowed or contradicted by accompanying messages or notices from the debt collector." *Wilson*, 225 F.3d at 355 (citing *Graziano*, 950 F.2d at 111; *Payco–General*, 943 F.2d at 484).

Caprio, 709 F.3d at 148. The entire FDCPA is premised on the potential gullibility and ignorance of the "least sophisticated debtor." *E.g.*, *id.* at 149. Under this admittedly arguably pejorative premise, the Court also reasons that the average member of the proposed Class is unable or unlikely to bring an individual action.

### C.     Plan for Notice and Fairness Hearing

Under Federal Rule 23(c)(2)(B),

[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
>    **(i)** the nature of the action;
>    **(ii)** the definition of the class certified;
>    **(iii)** the class claims, issues, or defenses;

> **(iv)** that a class member may enter an appearance through an attorney if the member so desires;
>
> **(v)** that the court will exclude from the class any member who requests exclusion;
>
> **(vi)** the time and manner for requesting exclusion; and
>
> **(vii)** the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). Further, where, as here, the parties have proposed settlement but the class has not already been certified, the notice must "afford[] a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so." *Id.* 23(e)(4).

Because North Shore's records contain a list of all the individuals to whom North Shore sent the Subject Letter, the parties propose to mail notice of the certification and proposed Settlement Agreement to those individuals' last known addresses.[15] The definition of the proposed Class excludes individuals "whose class notice is . . . returned [as] undeliverable and without a forwarding address." Settlement Agreement ¶ 15(A) (emphases omitted). Thus, because such notice is, in fact, "individual notice to all members who can be identified through reasonable effort," and the Class definition automatically excludes those who do not receive notice, the Court finds that, in this case, first class mailing of the notices comports with due process and Federal Rule of Civil Procedure 23(c)(2) as "the best notice practicable under the circumstances." Fed. R. Civ. P. 23(c)(2). *See generally, e.g.*, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 318-19 (1950). The Court will therefore approve the Notice of Proposed Class Action Settlement attached to Ms. Harlan's September 4, 2014 Status Report (Docket No. 27).

---

[15] "Because the settlement will have been preliminarily approved by way of this Memorandum and Order, notice of the certification and the proposed settlement can be combined." *Gates*, 248 F.R.D. at 445.

**CONCLUSION**

For the foregoing reasons, the Court will preliminarily approve the parties' Settlement Agreement and certify the Class for settlement purposes. An Order with relevant dates follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge