**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DENISE HARLAN,** | : | |
| *individually and on behalf of all* | : | |
| *others similarly situated*, | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **TRANSWORLD SYSTEMS, INC., d/b/a,** | : | **No. 13-5882** |
| **NORTH SHORE AGENCY, INC.** | : | |
| *Defendant.* | : | |

**M E M O R A N D U M**

PRATTER, J.                                                   FEBRUARY 6, 2015

Denise Harlan brought this action under the Fair Debt Collection Practices Act ("FDCPA") on behalf of herself and a Class of her fellow Philadelphians who all received a particular debt collection letter from Transworld Systems, Inc., also known as North Shore Agency, Inc. ("North Shore"). This particular letter (the "Subject Letter") failed to comply with the provision of the FDCPA requiring that debt collectors notify recipients of certain debt collection communications of their "validation rights," meaning that the debt collector must notify these recipients both that they have the right to challenge the claimed debt and how to do so. *See* 15 U.S.C. § 1692g(a). While the Subject Letter did include language outlining the recipients' validations rights, this language was printed on the reverse side of the Subject Letter and was inconspicuous and therefore in violation of the FDCPA.[1]

---

[1] The parties' dispute is described, detailed, and analyzed in the Court's April 14, 2014 Amended Memorandum (Docket No. 14), available at *Harlan v. Transworld Systems, Inc.*, No. 13-5882, 2014 WL 1414508 (E.D. Pa. Apr. 14, 2014). The April 14, 2014 Memorandum includes a reproduction of the Subject Letter.

North Shore sought dismissal of this action, arguing that the notice of the validation rights complied with the FDCPA. The Court, however, denied North Shore's Motion to Dismiss, as well as its later Motion for Reconsideration or, alternatively, Interlocutory Appeal. *See* Docket Nos. 14, 21. Despite North Shore's continuing disagreement with the Court's rulings, North Shore decided to enter into the proposed Settlement Agreement with Ms. Harlan and the Class, "wish[ing] to avoid the expense and uncertainty of litigation." Settlement Agreement pmbl., at 2.

Because the proposed Settlement Agreement resolves a putative class action under Rule 23 and would resolve the rights of absent parties, the Court must determine whether it meets the requirements of Federal Rule of Civil Procedure 23(e). Rule 23(e) includes requirements that all Class Members receive notice of the Settlement in a reasonable manner and that the proposed Settlement be fair, reasonable, and adequate. In a case such as this, where the Court has not already certified a class, the Court must also determine whether the proposed Class meets the certification requirements of Rule 23. *Id.* 23(c)(1).

The Court preliminarily approved the Settlement and preliminarily certified the proposed Class in September 2014. *See* Docket Nos. 28 and 29. At that time, the Court set a final approval hearing and approved the plan for notifying the Class Members of the Settlement and their rights to opt out of the Settlement or object to it before its final approval by the Court. *See id.* The Court now considers the Settlement Agreement and the lack of objections thereto and determines that it warrants final approval.

## I.     PROPOSED SETTLEMENT

The proposed Settlement defines the Class as:

All persons with addresses in Philadelphia, Pennsylvania, who were sent an initial collection letter from [North Shore] in which the statutory 1692g validation notice was printed on the reverse of the letter, in uppercase and lowercase type, among paragraphs which were not indented or spaced, and placed along other copy that

was capitalized, and the phrase "NOTICE-SEE REVERSE SIDE FOR IMPORTANT INFORMATION" in all capital letters was on the front of the letter, where the underlying debt was incurred primarily for personal, family, or household use, where the letter bears a date from October 12, 2012 to October 4, 2013.

Settlement Agreement ¶ 1(C).

The parties premised their agreement on the proposal that the settlement Class consisted of 229 individuals, who would each be entitled to payment of $100.00 from North Shore.[2] North Shore also agrees to pay Ms. Harlan a service award of $1,000 as well as $1,000 for her individual claim, in addition to her $100 payment as a Class Member. North Shore will pay Class Counsel fees and costs of $44,450.00 and will pay the expenses of the Class Administrator. Finally, North Shore agrees to alter its debt collection letters to address the defects alleged by Ms. Harlan and the Class. In exchange, the Class will release any and all claims against North Shore relating to the alleged defects in the Subject Letter.

Notice of the proposed Settlement was sent to the last known addresses of 227 Class Members.[3] A copy of that Notice is attached to this Memorandum. The Notice informed Class Members that they each would receive a $100.00 settlement payment should they remain in the Class. The Notice also informed Class Members of their rights to exclude themselves from the Settlement or object to it. In response to the 227 Notices mailed out, however, there were no objections and no requests for exclusion. Nine of the notices were returned as undeliverable with no forwarding address. Funds from these undeliverable notices, as well as from any duplicate

---

[2] The parties had originally premised their settlement on 222 individuals receiving $100 each, but, upon further investigation, the parties concluded that such a settlement excluded seven individuals. *See* October 6, 2014 Order (Docket No. 31). The parties then submitted to the Court a joint Motion to Amend the Settlement such that 229 individuals would each receive $100, which the Court construed as a motion for preliminary approval of a proposed amendment to the Settlement Agreement. *Id.* The Court thereby granted the motion. *Id.*

[3] Two of the 229 entries of Class Members were found to be duplicates. The settlement amount remains premised on 229 Class Members (instead of the actual number of 227) and the extra $200 will go to the *cy pres* award (discussed below).

records or (once the $100 checks are mailed out) uncashed checks, will constitute a *cy pres*

award to Clarifi, a non-profit organization that will use the funds to provide financial education

to individuals in Philadelphia.

## II.    ANALYSIS

Federal Rule of Civil Procedure 23 provides that "[t]he claims, issues, or defenses of a

certified class may be settled, voluntarily dismissed, or compromised only with the court's

approval." Fed. R. Civ. P. 23(e). The following procedures apply to a proposed settlement,

voluntary dismissal, or compromise:

> (1)    The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
> (2)    If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
> (3)    The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
> (4)    If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
> (5)    Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection maybe withdrawn only with the court's approval.

*Id.* The "[f]actual determinations necessary to make Rule 23 findings must be made by a

preponderance of the evidence. In other words, to certify a class the district court must find that

the evidence more likely than not establishes each fact necessary to meet the requirements of

Rule 23." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 257-58 (3d Cir. 2009) (quoting *In

re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008)). "The decision of

whether to approve a proposed settlement of a class action is left to the sound discretion of the

district court." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283,

299 (3d Cir. 1998) (quoting *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975)).

## A.   Class Certification

Where, as here, the Court has not already certified a class prior to evaluating a settlement, the Court initially must determine whether the proposed settlement class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997); *see also In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 341 (3d Cir. 2010) ("[A] district court first must determine that the requirements for class certification under Rule 23(a) and (b) are met."). Rule 23(a) contains four threshold requirements:

    (1)     the class is so numerous that joinder of all members is impracticable;
    (2)     there are questions of law or fact common to the class;
    (3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
    (4)     the representative parties will fairly and adequately protect the interests of the class.

These requirements are often referred to as numerosity, commonality, typicality, and adequacy.[4] In addition to satisfying Rule 23(a)'s requirements, the proposed class must also fit within one of the categories of class actions enumerated in Rule 23(b). As the Third Circuit Court of Appeals has explained:

Rule 23(b)(2) authorizes class actions seeking injunctive relief in instances where the defendant "has acted or refused to act on grounds that apply generally to the

---

[4] In addition, the Third Circuit Court of Appeals has explained that certification is inappropriate where the contours of the proposed class are not discernible by objective criteria. *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013) ("[A] plaintiff must show, by a preponderance of the evidence, that the class is currently and readily ascertainable based on objective criteria." (quotation marks and citation omitted)). This requirement has essentially been distilled down to the principle that "if class members cannot be ascertained from a defendant's records, there must be 'a reliable, administratively feasible alternative'" that relies upon "more than ascertaining by potential class members' say so." *Id.* at 304 (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012)). Here, the Class is readily ascertainable using objective criteria. The Class definition is narrowly defined as individuals with a Philadelphia, Pennsylvania address who were sent the Subject Letter by North Shore. The Members of the Class were ascertained using North Shore's records, enabling identification of the individuals who were sent the Subject Letter.

class, so that final injunctive relief . . . is appropriate respecting the class as a
whole." Fed. R. Civ. P. 23(b)(2); *see In re Comm. Bank of N. Va.* (*Comm. Bank I*),
418 F.3d 277, 302 n.14 (2005). Separately, certification pursuant to Rule 23(b)(3)
seeking monetary compensation is permitted where (1) "questions of law or fact
common to class members predominate over any questions affecting only
individual members," and (2) "a class action is superior to other available
methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.
23(b)(3); *see Collins v. E.I. DuPont de Nemours & Co.*, 34 F.3d 172, 180 (3d Cir.
1994). These twin requirements are commonly referred to as predominance and
superiority.

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (en banc).

Here, the Court finds that the requirements of Rule 23(a) have been met. First, the Class

is sufficiently numerous. There are 227 individuals in the Class, making joinder of all Members

impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir.

2001) ("No minimum number of plaintiffs is required to maintain a suit as a class action, but

generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40,

the first prong of Rule 23(a) has been met."). Second, the Class Members' claims share common

questions of law and fact, *see* Fed. R. Civ. P. 23(a)(2), as the alleged FDCPA violations are

"based entirely upon the uniform, non-individualized content of defendants' standardized debt

collection letters." *See Jordan v. Commw. Fin. Sys., Inc.*, 237 F.R.D. 132, 138 (E.D. Pa. 2006).

Third, similarly, the claims of Ms. Harlan are "typical of the claims or defenses of the class," *see*

Fed. R. Civ. P. 23(a)(3), as "cases challenging the same unlawful conduct which affects both the

named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of

the varying fact patterns underlying the individual claims." *See Baby Neal v. Casey*, 43 F.3d 48,

56 (3d Cir. 1994).

Fourth, Ms. Harlan and Class Counsel have protected and will continue to "fairly and

adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(4). The Court has

observed no "conflicts of interest between named parties and the class they seek to represent."

*See Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (quoting *Amchem*, 521 U.S. at 625);
*see also Allen v. Holiday Universal*, 249 F.R.D. 166, 180 (E.D. Pa. 2008) ("At a fundamental
level, the claims of the named plaintiffs and putative class members are based on the same
alleged course of misconduct . . . and the same legal theories, notwithstanding any individual
factual differences. This fundamental underlying similarity is sufficient to ensure that the named
plaintiffs will advance the interests of the Class."). The Court is likewise satisfied "that the
attorneys for the class representatives are experienced and qualified to prosecute the claims on
behalf of the entire class." *Beck*, 457 F.3d at 295 (quoting *Baby Neal*, 43 F.3d at 55). Cary L.
Flitter and Andrew M. Milz are experienced class action litigators under federal consumer
protection laws such as the FDCPA. They have to date competently and adequately represented
the Class here.

      The Class also meets the requirements of Rule 23(b)(3). This case essentially turns on a
single legal question: whether, as a matter of law, North Shore's Subject Letter complied with
the FDCPA's notice requirement. This question is common to the Class because, by definition,
all Class Members received the Subject Letter and were victims of a statutory violation of the
FDCPA. The Class Members therefore share identical claims, save for the possibility that certain
Class Members may have suffered actual harm from the violative Subject Letter. Based on the
lack of exclusions and objections, however, the Court believes that any individualized actual
harm from the violative Subject Letter does not defeat the finding that common questions
predominate.

      This type of case is appropriately brought as a class action. As the Court has previously
noted, Congress's scheme enshrined in the FDCPA presumes that class action litigation will be
desirable and efficient for vindicating the rights of debtors. After all, the FDCPA explicitly

provides for class damages, *see* 15 U.S.C. § 1692k(a)(2)(B), seemingly out of recognition that, "[g]iven the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action." *Lake v. First Nationwide Bank*, 156 F.R.D. 615, 626 (E.D. Pa. 1994). And, as the Court has previously observed, the FDCPA is premised on the potential gullibility and ignorance of the "least sophisticated debtor," *see, e.g.*, *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 149 (3d Cir. 2013), and under this (arguably pejorative) premise, the average member of the Class here is unable or unlikely to bring an individual action.

The Court finds that the standards of Rule 23 have been met and the Court will certify the Class.

## B. Notice

Rule 23 requires that all class members of a Rule 23(b)(3) class receive the best notice practicable of the class action. Fed. R. Civ. P. 23(c)(2)(B). Specifically, such notice

> must, in clear, concise and plain language, state: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) the class member's right to enter an appearance by an attorney; (v) the class member's right to be excluded from the class; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of settlement on class members.

*Id.*

Further, under Rule 23(e), all members of the class must be notified of the terms of any proposed settlement. This "notice is designed to summarize the litigation and the settlement" and "to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation." *Prudential*, 148 F.3d at 327 (quoting 2 *Newberg on Class Actions* § 8.32 at 8–109.).

8

Here, the requirements of notice have been satisfied. The issued Notice informs Class Members of the nature of the action against North Shore, as well as the definition of the Class, in clear, concise, and plain language. The Notice informs Class Members that their "rights are affected whether [they] act or don't act." Notice at 1. It informs Class Members of their ability to exclude themselves from the lawsuit, which, as the Notice explains in plain language, means that Class Members can "[g]et out of this Lawsuit. Get no settlement payment. Keep any rights." Notice at 2. The Notice tells Class Members that they may choose to object to the Settlement, which is, again, explained in plain language: "If you remain in the class, you may write to the Court about why you don't like the settlement and do not want it approved: Act by November 21, 2014." Notice at 2. The Notice includes instructions on how to so exclude oneself or object. The Notice explains in adequate detail the terms of the Settlement and the effect of the Settlement on Class Members. The Notice explains that by remaining in the Class, Class Members will lose their rights to sue North Shore for the issues involved in this action. Further, the Notice details the role of Class Counsel, including how Class Counsel will be paid and how Class Members can respond to the fees to be paid to Class Counsel.

The definition of the proposed Class excludes individuals "whose class notice is . . . returned [as] undeliverable and without a forwarding address." Settlement Agreement ¶ 15(A). Thus, because the parties have provided "individual notice to all members who can be identified through reasonable effort," and the Class definition automatically excludes those who do not receive notice, the Court finds that, in this case, first class mailing of the notices comports with due process and Federal Rule of Civil Procedure 23(c)(2) as "the best notice practicable under the circumstances." Fed. R. Civ. P. 23(c)(2). *See generally, e.g.*, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 318-19

(1950). Accordingly, the Court finds that the Notice sent to the Class Members satisfies Rule 23's requirements.

### C. Fair, Reasonable, and Adequate

To grant final approval, the Court must conclude that the proposed Settlement is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2); *Ins. Brokerage*, 579 F.3d at 258. Although no opposition has been filed to the Motion, no objectors have contested the Settlement, and no individuals have excluded themselves from the Class, pursuant to Rule 23(e), the Court has the duty of protecting absentee Class Members, and the Court executes this duty by independently "assuring the settlement represents adequate compensation for the release of the class claims." *Prudential*, 148 F.3d at 316-17. Indeed, certain requirements of Rule 23 "demand undiluted, even heightened, attention in the settlement context." *Amchem*, 521 U.S. at 620. Cognizant of this duty, the Court evaluates the fairness, reasonableness, and adequacy of the Settlement as follows.

### 1.  Initial Presumption of Fairness

Based upon the record, the Court concludes that an initial presumption of fairness attaches to this Settlement. The Third Circuit Court of Appeals has "directed a district court to apply an initial presumption of fairness when reviewing a proposed settlement where: '(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *Warfarin*, 391 F.3d at 535 (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001)).

These criteria have been met here. The Court has already found that the settlement negotiations occurred at arm's length. *See* September 9, 2014 Memorandum and Order (Docket

Nos. 30 and 31). Because this litigation essentially turns on a single question of law—whether the language in the Subject Letter contradicts or overshadows the validation notice in violation of the FDCPA—and that single question has been litigated and decided, there has been sufficient discovery prior to the Settlement. As previously stated, the proponents of this Settlement are experienced in this type of litigation and no Class Members have objected to the Settlement.

Given that the Court finds that the four factors are sufficiently met, the presumption of fairness applies to the Settlement.

2.  Standards for Determining Fairness of Proposed Settlement

The Third Circuit Court of Appeals has set forth nine factors, known as the *Girsh* factors, to be considered when determining the fairness of a proposed settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157 (internal quotations and punctuation marks omitted); *Prudential*, 148 F.3d at 317. "The settling parties bear the burden of proving that the *Girsh* factors weigh in favor of approval of the settlement." *Pet Food*, 629 F.3d at 350 (citing *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995)).

In *In re Prudential Insurance Company of America Sales Practice Litigation Agent Actions*, the Third Circuit Court of Appeals also identified additional non-exclusive factors to consider for a "thoroughgoing analysis of settlement terms." *See Pet Food*, 629 F.3d at 350. Those factors, known as the *Prudential* factors, include:

[T]he maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provision for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

*See Prudential*, 148 F.3d at 323.[5] While the Court must make findings as to the *Girsh* factors to approve a settlement as fair, reasonable, and adequate, the *Prudential* factors are illustrative of additional factors that may be useful even though they are not essential or inexorable depending upon the specific circumstances.

Although there is public interest in settling class actions, district courts should apply "an even more rigorous, heightened standard in cases where settlement negotiations precede class certification, and approval for settlement and class certification are sought simultaneously." *Pet Food*, 629 F.3d at 350 (internal quotations omitted). "This heightened standard is designed to ensure that class counsel has demonstrated 'sustained advocacy' throughout the course of the proceedings and has protected the interests of all class members." *Prudential*, 148 F.3d at 317.

Thus, the Court is required to make an independent analysis of the Settlement to determine whether it is fair, reasonable, and adequate by independently evaluating all of the *Girsh* factors (and the *Prudential* factors, as appropriate), recognizing that the Court cannot substitute the parties' assurances or conclusory statements for its independent analysis of the settlement terms. *Pet Food*, 629 F.3d at 351. Accordingly, the Court "may find it necessary to drill down into the case and into the agreement to make an independent 'scrupulous' analysis of

---

[5] The Court of Appeals invites individualized analysis by noting that "[o]ther related factors . . . also may be relevant to this inquiry." *Prudential*, 148 F.3d at 323 n.73.

the settlement terms" and affirmatively seek out information to the extent that the parties have either not supplied it or have provided only conclusory statements. *See id.*

3.  Discussion of *Girsh* and *Prudential* Factors

The Court's analysis of the *Girsh* factors, and the *Prudential* factors, as appropriate, leads to the conclusion that the relevant considerations weigh in favor of a finding of fairness under Rule 23(e).

*a.  The Complexity, Expense, and Likely Duration of the Litigation*

The first *Girsh* factor, which evaluates the complexity, expenses, and likely duration of the litigation, "captures the probable costs, in both time and money, of continued litigation." *Warfarin*, 391 F.3d at 536 (citation omitted). The Court finds that this factor weighs in favor of Settlement. Although the Court has already determined, after sufficiently vigorous litigation by the parties, that, as a matter of law, the Subject Letter did not comply with the FDCPA, the parties would still be facing significant further litigation. An appeal might likely follow the resolution of this case (indeed, North Shore unsuccessfully sought leave to challenge via interlocutory appeal the Court's ruling on the Motion to Dismiss). Moreover, the parties would need to litigate the amount of damages available, which could involve a fact-intensive inquiry into North Shore's intent in violating the FDCPA. *See* 15 U.S.C. § 1692k. Avoiding the expenses of this further litigation favors the Settlement.

*b.  The Reaction of the Class to the Settlement*

"In an effort to measure the class's own reaction to the settlement's terms directly, courts look to the number and vociferousness of the objectors." *Gen. Motors*, 55 F.3d at 812. Considering this factor from a somewhat different angle, the Third Circuit Court of Appeals has recognized the practical conclusion that it is generally appropriate to assume that "silence

constitutes tacit consent to the agreement" in the class settlement context. *See Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 n.15 (3d Cir. 1993). This factor clearly weighs in favor of approval, given that there was not a single objection or request for exclusion from the Class of over 220 individuals.

c.  *The Stage of the Proceedings and the Amount of Discovery Completed*

This *Girsh* factor requires the Court to evaluate whether Plaintiffs have an "adequate appreciation of the merits of the case before negotiating" settlement. *Prudential*, 148 F.3d at 319 (quoting *Gen. Motors*, 55 F.3d at 813). "To ensure that a proposed settlement is the product of informed negotiations, there should be an inquiry into the type and amount of discovery the parties have undertaken." *Id.*

The Court is satisfied that Class Counsel conducted sufficient discovery to appreciate the merits of the litigation and to adequately inform negotiations. The parties have already litigated the key question in this case—whether the Subject Letter violated the FDCPA—and Class Counsel has conducted discovery concerning North Shore's financial state and the makeup of the Class. This factor weighs in favor of the Settlement.

d.  *Risks of Establishing Liability, Damages, and Maintaining the Class Action Through Trial*

These three *Girsh* factors concern the risks of establishing liability, damages, and maintaining a class action through trial. The factors require the Court to "survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement." *Warfarin*, 391 F.3d at 537. The inquiry requires balancing "the likelihood of success and the potential damage award if the case were taken to trial against the benefits of immediate settlement." *Prudential*, 148 F.3d at 319. That is, the Court assesses the risks of establishing liability to "examine what the potential rewards (or downside)

of litigation might have been had class counsel decided to litigate the claims rather than settle them." *Gen. Motors*, 55 F.3d at 814. Put another way, the inquiry into establishing damages "attempts to measure the expected value of litigating the action rather than settling it at the current time." *Id.* at 816.

These three factors, taken together, weigh in favor of the Settlement. Although the Court has ruled in favor of the Class by finding that the Subject Letter violated the FDCPA, the Court did acknowledge at the time that the question was "a close one." The Court, of course, is satisfied that the answer it reached was the correct one and that any appeal by North Shore would be unsuccessful. Nevertheless, the Court recognizes the inherent uncertainty in further litigation and an eventual appeal. The amount of damages, furthermore, are far from certain. Determining damages in the FDCPA context requires examining North Shore's net worth. The FDCPA caps statutory damages at the lesser of $500,000 or 1% of the defendant's net worth. 15 U.S.C. § 1692k(a)(2). Here, NSA's net worth is approximately $534,000, meaning that the statutory damages would be capped at around $5,340, which would be shared among the 227 Class Members. The Settlement Amount—$100 per Class Member—far exceeds this statutory cap (reflecting the strength of the Class's case and North Shore's aversion to expending further money in litigating this case). This likelihood that further litigation would reduce the amount of damages available to the Class Members weighs heavily in favor of the Settlement. The risks of establishing liability and maintaining a class action through trial are perhaps somewhat slight in this case (but by no means nonexistent), and the Court finds that those two factors weigh neutral. But the Court finds that, given the heavy weight of the factor concerning the expected damages should the case proceed to trial, these three factors taken together still weigh in favor of the Settlement.

15

*e. The Ability of the Defendant to Withstand a Greater Judgment*

This factor "is concerned with whether the defendants could withstand a judgment for an amount significantly greater than the Settlement." *Cendant*, 264 F.3d at 240. The Court finds that this factor weighs heavily in favor of the Settlement. As already noted, North Shore's net worth is roughly half a million dollars. This Settlement imposes a significant financial burden upon North Shore. Altogether, this Settlement award will exceed $70,000—around 15% of North Shore's net worth. This Settlement award far exceeds the FDCPA cap on damages at 1% of North Shore's net worth, and it is unlikely that North Shore could sustain a significantly larger award.

*f. The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation*

"The last two *Girsh* factors ask whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." *Prudential*, 148 F.3d at 322. In other words, the Court evaluates "whether the settlement represents a good value for a weak case or a poor value for a strong case. The factors test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Warfarin*, 391 F.3d at 538 (citing *Prudential*, 148 F.3d at 322).

Here, as the Court has already reasoned, the Settlement exceeds what would likely be the best possible recovery, and though the risks of litigation are perhaps not as substantial as in other situations, the risks of litigation can never be truly eliminated. These factors, therefore, weigh in favor of final approval of the Settlement.

g. Prudential *Factors*

The *Prudential* factors, to the extent they apply to this case, weigh in favor of the Settlement. The underlying issues are certainly mature, as the parties have litigated the single most important question of liability in the case. Class Counsel is experienced enough to appreciate the merits of the litigation given the Court's rulings upon the several motions addressing the merits in this case. The parties have conducted sufficient discovery on the merits of the case. Class Members were afforded the opportunity to opt out of the litigation but none chose to do so. As addressed below, the provision for attorneys' fees is reasonable. The procedure for processing individual claims under the Settlement is fair and reasonable, as all Class Members must do is cash the $100 check that will arrive at their last known address.

The service award and individual recovery for Ms. Harlan is likewise fair and reasonable. As the Court reasoned in its Memorandum regarding preliminary approval, Ms. Harlan's incentive award here is not out of line with incentive awards in similar cases. *See, e.g.*, *Orloff v. Syndicated Office Sys., Inc.*, No. 00-5355, 2004 WL 870691, at *7 (E.D. Pa. Apr. 22, 2004) ($5,000); *Bonett v. Educ. Debt Servs., Inc.*, No. 01-6528, 2003 WL 21658267, at *7 (E.D. Pa. May 9, 2003) ($4,000, and discussing similar awards). The incentive award does not come out of the Settlement Amount of $22,900, and, as the Court reasoned previously, the modest additional incentive award of $1,000 is reasonable as "it is surely proper to provide reasonable incentives to individual plaintiffs whose willingness to participate as lead plaintiffs allows class actions to proceed and so confer benefits to broader classes of plaintiffs," *Rosenau v. Unifund Corp.*, 646 F. Supp. 2d 743, 755 (E.D. Pa. 2009).

17

Finally, the *cy pres* award to Clarifi,[6] a nonprofit organization dedicated to financial

literacy in the Delaware Valley, contributes to the overall fairness of this Settlement. Any

undeliverable funds from the Settlement Amounts will go towards financial education programs

for low-income individuals who reside in Philadelphia. "A court may also utilize *cy pres*

principles to distribute unclaimed funds from a class action settlement. In so doing, the court

should consider (1) the objectives of the underlying statute(s), (2) the nature of the underlying

suit, (3) the interests of the class members, and (4) the geographic scope of the case." *Schwartz v.*

*Dallas Cowboys Football Club, Ltd.*, 362 F. Supp. 2d 574, 576 (E.D. Pa. 2005) (citations

omitted). Although the Court is well aware that the role of *cy pres* awards in class action

settlements has come under criticism and concern, the *cy pres* award here is not untoward and

will serve the objectives of the FDCPA.[7] The FDCPA's declared purpose is to protect consumers

from abusive debt collection practices. *See* 15 U.S.C. 1692(e). Underlying much of the FDCPA,

particularly the provisions regarding validation rights, is the age-old premise that knowledge is

power—*scientia potentia est*.[8] The nature of Ms. Harlan's action is that North Shore failed to

---

[6] Clarifi, 1608 Walnut St., 10th Floor, Philadelphia, PA 19103; http://www.clarifi.org.

[7] *See generally, e.g.*, Jennifer Johnston, Comment, *Cy Pres Comme Possible to Anything is Possible: How Cy Pres Creates Improper Incentives in Class Action Settlements*, 9 J.L. Econ. & Pol'y 277 (2013); Sam Yospe, Note, *Cy Pres Distributions in Class Action Settlements*, 2009 Colum. Bus. L. Rev. 1014. *But see* Wilber H. Boies & Latonia Haney Keith, *Class Action Settlement Residue and Cy Pres Awards: Emerging Problems and Practical Solutions*, 21 Va. J. Soc. Pol'y & L. 267, 293 (2014) ("There has also been considerable recent criticism of specific cy pres awards, and several awards have been reversed on appeal. As discussed in this Article, problems concerning specific awards can be anticipated and avoided by following a few simple rules: (1) compensation of class members should come first; (2) cy pres recipients should reasonably approximate the interests of the class; (3) cy pres awards are appropriate where cash distributions to class members are not feasible; (4) cy pres distributions should recognize the geographic make-up of the class; (5) conflicts of interest and the appearance of impropriety should be avoided; and (6) public interest and legal services organizations should be considered as appropriate cy pres recipients. Following these simple rules should minimize controversies about an effective and important mechanism for class action administration.").

[8] Thomas Hobbes, Leviathan 44 (1676); *see also Proverbs* 24:5 (King James) ("A wise man is strong, yea a man of knowledge encreaseth strength.").

provide debtors with the required information that debtors need to protect their rights. Clarifi's financial education programs further the objectives of the FDCPA and Ms. Harlan's lawsuit by furthering financial literacy—helping debtors and potential debtors protect themselves with knowledge. The award is limited to financial education programs in Philadelphia, ensuring that the funds match the geographic scope of the lawsuit and the interests of the Class Members in knowing and protecting their rights.

*h. Summary of* Girsh *and* Prudential *Factors*

Upon considering the Settlement Agreement in light of all of the *Girsh* and the relevant *Prudential* factors, the Court is satisfied that the Settlement is fair, reasonable, and adequate. As discussed, a few of the factors weigh neutral. However, all of the factors considered in determining the fairness of a settlement "are a guide; an unfavorable conclusion regarding one or more factors does not automatically render the settlement unfair." 2 Joseph M. McLaughlin, *McLaughlin on Class Actions: Law and Practice* § 6:8 (6th ed. 2010). Accordingly, not every factor need weigh in favor of settlement in order for the settlement to be approved by the Court. *See Cendant*, 264 F.3d at 242-43 (affirming a final settlement approval when not all factors weighed in favor of approval). Because, on balance, the factors as considered above weigh in favor of the Settlement, the Court concludes that approval of the Settlement is appropriate pursuant to Fed. R. Civ. P. 23(e).

## III.   ATTORNEYS' FEES AND COSTS

The Court also finds that the total amount of $44,450.00 in attorneys' fees and costs is fair and reasonable.[9] As the Court noted in its Memorandum addressing preliminary approval, "the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs," 15 U.S.C. § 1692k(a)(3), and the amount of attorneys' fees is not

---

[9] Class Counsel's out-of-pocket costs amount to $583.07.

unreasonable simply because it may be high compared to the statutory award or settlement amount, as here. *See, e.g.*, *Graziano*, 950 F.3d at 113-14 ("Indeed, several courts have required an award of attorney's fees even where violations were so minimal that statutory damages were not warranted. . . . [I]n a typical case under the [FDCPA], the court should determine what constitutes a reasonable fee in accordance with the substantial Supreme Court precedent pertaining to the calculation of reasonable attorney's fees.").

The Court analyzes the amount allocated for attorneys' fees in costs using the lodestar analysis, whereby the Court considers the award in light of the number of hours spent in litigation by counsel multiplied by counsel's hourly rate. Class Counsel here calculates a lodestar amount of $59,224.50—exceeding the capped award in the Settlement. The lodestar amount is a "presumptively reasonable fee," *see Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 310 (3d Cir. 2008). The Court, upon examining the time Class Counsel reportedly spent litigating the case, as well as the hourly rates of Mr. Flitter, Mr. Milz, and a legal assistant, finds that the amount of attorneys' fees and costs of $44,450.00 is reasonable. Collectively, Class Counsel devoted a total of 145.2 hours thus far on litigating this case. That amount is reasonable in light of the contentious motion practice that the parties undertook prior to arriving at a settlement. The reported hourly rates of Class Counsel—$620 an hour for Mr. Flitter and $305 an hour for Mr. Milz—are reasonable given the current market rates in the region for, respectively, a highly experienced litigation partner and an experienced associate.[10]

---

[10] The rate for the legal assistant, $185 an hour, who only contributed 6.5 hours to the litigation, does appear to be more than the market rate. Class Counsel contend that the legal assistant's exceptional experience and efficiency make her rate reasonable. The Court does not make any findings on the reasonableness of this rate. Because of her minimal time contributions to the case, whether the legal assistant's rate is reasonable does not affect the finding here that the overall amount of attorneys' fees and costs, which falls far below the lodestar amount, is reasonable.

**IV.     CONCLUSION**

For the foregoing reasons, the Court determines that the Class meets the certification requirements of Rule 23 for settlement purposes, and concludes that the Settlement Agreement is fair, reasonable, and adequate. Accordingly, the Court grants Plaintiffs' Motion for Final Approval of the Class Action Settlement with North Shore.

An Order consistent with this Memorandum follows.


BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge